Fuld, J.
On August 17, 1955, wearing apparel was stolen from the stores of B. Altman & Co., Lord & Taylor and Best & Co., all located in Manhasset, Long Island. The defendant was charged, in an indictment containing three counts, with grand larceny in the second degree, the theft from each store being the subject of a different count in recognition of the manifest fact that each taking constituted a different larceny. The defendant actually admitted that she had stolen the clothing from Altman’s and, although she denied complicity in the other thefts, the evidence establishes almost beyond all doubt that she was equally guilty of the takings from Lord & Taylor’s and Best’s as well, and the jury returned a verdict of guilt on each count. Sentences imposed in connection with each count were to run concurrently.
Of the several points advanced by the defendant, all of which have been considered, only one, that involving the value of the stolen articles, merits discussion. The evidence on the subject was fairly brief. The wholesale price of each of the two suits stolen from Altman’s was $57, the retail price $95. Of the four suits taken from Lord & Taylor’s, the wholesale cost of one was $57, its retail price $95; each of two others had a wholesale price of $63 and a retail price of $110; and the fourth was priced at $69 wholesale and $125 retail. Of each of two of the items stolen from Best’s, the wholesale cost was $39.95 and of the third $35; the respective retail prices for these articles were $69.95 and $59.95.
The trial court, after noting that the dividing line between grand and petit larceny was $100, told the jury that the defendant could be convicted of grand larceny in the second degree only if the value of the property stolen exceeded that sum. As to the meaning of ‘ ‘ value, ’ ’ the court charged that ‘ ‘ the market value of the thing stolen is deemed its value ” and that such market value was to be determined ‘ ‘ by considering what that garment would bring on the market under selling circumstances and conditions similar to those of the owners in this case.” And, added the court, in arriving at their conclusion, the jurors were to consider the 1 ‘ wholesale value of the garments * * * the prices paid by the owners, * * * the price [sic] at which the owners sold similar garments, * * * the price [sic] at which owners similarly situated under similar eircum *145 stances and under similar conditions sold similar garments, and also * * * prices ordinarily paid by customers for similar garments.” As is evident, the court thus permitted the jury to take into account both the wholesale price, that is, what the victim store paid for the articles, and the retail price, that is, what the store would have realized from their sale. If it was improper for the jury to consider retail price, the defendant has a grievance, for such price was considerably higher than the amount paid by the store to its wholesaler; had the jury been instructed that wholesale price was the only item to be considered in arriving at value, it might have concluded— though, we note, it would have been contrary to the evidence — that the goods were worth less than $100.
‘ ‘ In every case not otherwise regulated by statute, ’ ’ section 1305 of the Penal Law recites, “ the market value of the thing stolen is deemed its value.” The question for resolution — and it has not heretofore been decided by this court (see People v. Rupoli, 303 N. Y. 595, 597) —concerns the meaning of the term ‘ ‘ market value ’ ’: where the theft is from a department store, does it signify value in the retail market or, as the defendant urges, the cost of replacement or wholesale value? In other words, is the market value to be determined by the value in the market in which the thief would have had to purchase the goods or the value in the market in which the owner would have had to replace them?
In addition to section 1305, there are two other provisions concerned with the value of stolen articles, and from a consideration of them a clear and definite legislative scheme emerges. Section 1303 of the Penal Law defines the value of a stolen evidence of debt as the amount ‘1 due ’ ’ upon it at the time of the theft and section 1304, the value of a stolen passage ticket as the “ price ” at which it “ is usually sold”; if, therefore, a thief steals tickets from a railroad company, their value will be not their replacement cost to the company, or even the cost of the service, but the amount which the thief would have been required to pay for them had he purchased them, that is, their retail value. Thus, reading section 1305 together with the other sections, it becomes apparent that the Legislature, in setting up value as the measure of the gravity of the larcenous act, rejected replacement cost to the owner and fixed the value *146 at the amount which the thief would have had to pay had he purchased the goods instead of stealing them. •
While cost of replacement, or value in the wholesale market, is an item to be reckoned with in fixing value in the retail market, it is obvious that neither cost nor wholesale value may be adopted as the appropriate measure where ,tb.e larceny is from a department store. To accept wholesale value in such a case would be to ignore the facts of economic life. Stated very simply, it is the retailer’s function in our economy to move goods to the consuming public and, in the process, the market value of the goods is unquestionably enhanced. In addition, the retailer expends money on various services—including advertising, promoting, display and packaging—in order to increase the interest of the public and make it more willing to buy. When, therefore, a thief steals an article from a department store, he steals something having a market value quite different from that which it had in the hands of the wholesaler.
In short, market value, as the term is used in section 1305, denotes not the value of the goods in the market in which the owner had purchased them or in which he could replace them, but the value in the market in which the goods were being traded, namely, the price at which they would probably have been sold in the regular course of business at the time when and the place where they were stolen. And so, we note, the courts have held in a number of other jurisdictions where market value is likewise the criterion for determining the value of stolen property. (See State v. Mall, 112 Kan. 63, 65; Robinson v. State, 107 Neb. 591, 592-593; Hoffman v. State, 24 Okla. Cr. 236, 246; see, also, Hughes v. State, 33 Ariz. 23, 25-27; Woods v. People, 222 Ill. 293, 302; People v. Gilbert, 163 Mich. 511, 512; State v. Doepke, 68 Mo. 208, 213-214; State v. McComas, 89 Mont. 187, 193; Fugate v. State, 80 Okla. Cr. 200, 206-207; Keipp v. State, 51 Tex. Cr. 417, 419; State v. Boswell, 107 W. Va. 213, 215.)
Where, then, the property is stolen from a department store, the price at which it is there listed ordinarily reflects its market value. We do not, of course, mean to imply that such price is necessarily conclusive. The vital finding which the jury must make is the price at which the property would have been sold if it had not been stolen, and any evidence bearing on that question may properly be considered. It would be open to the *147 accused to show, for instance, that the list price was much higher than the price being paid for similar merchandise in the vicinity, for such evidence bears on whether the goods would actually have found buyers at list price even in the store from which they had been taken.
In the case before us, however, no such qualifying circumstances were presented, and it would have been sufficient had the trial judge simply charged the jury to consider the prices at which the stolen garments were listed for sale. The judge’s references to “wholesale value ” should have been omitted, but they could not have reacted to the defendant’s prejudice. On the contrary, as is clear from what we have written, the instructions with respect to market value were far more favorable to her than the law required.
The judgment of conviction should be affirmed.
Chief Judge Conway and Judges Desmond, Dye, Fbobssel, Van Voobhis and Bubkb concur.
Judgment affirmed.