H. K. PORTER COMPANY, Inc., a corporation, Plaintiff-Appellee,

v.

Herman HALPERIN, Maurice Halperin and Julius Halperin, co-partners, doing business as Progress Case & Bag Company, Defendants-Appellants.

H. K. PORTER COMPANY, Inc., a corporation, Plaintiff-Appellant,

v.

Herman HALPERIN, Maurice Halperin and Julius Halperin, co-partners, doing business as Progress Case & Bag Company, Defendants-Appellees.

Nos. 13227, 13228.

United States Court of Appeals Seventh Circuit.

Dec. 27, 1961.

Rehearing Denied Jan. 29, 1962.

Donald L. Thompson, Chicago, Ill., for Porter.

Oswell G. Treadway, Chicago, Ill., for Halperin.

Joseph H. Hinshaw, Perry L. Fuller, Chicago, Ill., for defendants-appellants.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This is an appeal and a cross-appeal from a $60,411.74 judgment for plaintiff, H. K. Porter, Inc., and against defendants, Herman, Maurice, and Julius Halperin, based on findings of fact and conclusions of law entered by the District Court. The judgment represents damages to plaintiff's property resulting from a fire it claims defendants negligently caused. The suit was based on diversity jurisdiction. The salient facts follow.

Plaintiff is in the business of manufacturing and selling at wholesale industrial tools such as saws, files, and wrenches. Its Chicago wholesale outlet was located at 1100 West Washington Street, where it occupied the first floor of a six-story brick building under a lease from the Chicago National Bank as trustee. The building was of mill construction, the floors being supported by rows of 12 inch square wooden pillars spaced about 25 feet apart.

The second and third floors were occupied by defendants who manufactured luggage. Large quantities of glue were used in their business. The glue was melted in a container that was placed in a water jacket, holding about ten gallons of water. The water jacket was placed on a two-flame gas burner located on a wooden box or table next to one of the wooden pillars on the third floor. A gas line extended from a meter within twelve to eighteen inches from the ceiling to the pillar, then down the pillar to the stove. The glue was warmed by the gas burner that was kept burning continuously, day and night, except over weekends and holidays. The gas was turned down at night but the lighted stove was unguarded and unattended after the last of defendants or their employees left the premises and locked the doors at the close of day.

On July 31, 1956, after the employees had left, one of the defendants who had charge of the third floor followed the usual routine, checking the glue pot, adding some glue cakes and water, and lowering the flame. He left the premises around 6:00 p. m.

A short time before 10:30 p. m. a fire broke out on the third floor. A Chicago Fire Department squad responded to the alarm. The firemen discovered a fire around and near the gas burner. The area around the burner, the table, and pillar was charred. The floor was nearly burned through. The automatic sprinkling system near the fire area had been open for an indefinite period; as a result, the firemen had to use less than 100 gallons of water to extinguish the fire.

Large quantities of water seeped through the floor and ceilings and around the walls. The water dripped and leaked onto plaintiff's stock of merchandise lo-

cated in cardboard boxes on shelves on the first floor. A considerable amount of the merchandise was composed of steel tools. Moisture and humidity from the water caused rust on the tools, damaging them so that they were unmarketable in the regular trade.

■ The defendants contend that plaintiff failed to prove the cause of the fire, or that the fire was the result of their negligence. The District Court found defendants negligent in operating and maintaining the gas burner which resulted in a fire that in turn caused water damage to plaintiff's property. The record supports the finding.

Before the fire, defendants' premises were inspected twice by the Fire Prevention Bureau of the Chicago Fire Department and defendants were told to discontinue the use of open fire gas burners for heating glue in open receptacles because "[T]his building is not suitable for this type of operation." The notices were ignored.

The firemen saw flames around the gas stove and found the pillar, the box, and the floor nearby heavily charred by smoke and heat. A rubber hose furnishing water for the water jacket had burned off and the gas pipe leading to the stove was emitting a flame.

The foregoing circumstances justified the trial court's finding that plaintiff's damage resulted from defendants permitting a gas burner to burn unattended and unguarded in physical surroundings which required defendants to foresee that a fire on the premises might occur, and its conclusion that defendants were negligent.

In Gearhardt v. American Reinforced Paper Co., 7 Cir., 244 F.2d 920, 924, this Court faced a similar problem whether there had been sufficient proof of negligence to impose liability on the owner of an industrial plant when a fire had allegedly originated from the burning of debris outside the owner's plant. In that case Judge Lindley, speaking for the Court, said:

"The rule governing such cases is well stated in Christie v. Callahan, 75 U.S.App.D.C. 133, 124 F.2d 825, 839, thus: 'Generally speaking, direct and positive testimony to specific acts of negligence is not required to establish it. Circumstantial evidence is sufficient, either alone or in combination with direct evidence. Circumstantial evidence may contradict and overcome direct and positive testimony. The limitation on its use is that the inference drawn must be reasonable. But there is no requirement that the circumstances to justify the inferences sought, negative every other positive or possible conclusion. The law is not so exacting that it requires proof of negligence or causation by testimony so clear that it excludes every other speculative theory.' * * * A theory of proximate cause resting in probative circumstances does not become a matter of speculation and conjecture by a mere suggestion of other possible causes which are unsupported by any proved facts. * * * *"

Another case which supports the view that circumstances such as those in the instant case are sufficient to fasten responsibility for the fire on defendants is Sycamore Preserve Works v. Chicago & N. W. Ry. Co., 366 Ill. 11, 12, 7 N.E.2d 740, 111 A.L.R. 1133.

Defendant next contends that the trial court erred in assessing damages in that there is no evidence which could properly be used as a basis for determining the extent of plaintiff's loss, and further that plaintiff aggravated, rather than mitigated, the loss.

The day following the fire, plaintiff's insurer, Philadelphia Manufacturers Mutual Insurance Company, called in the Underwriters Salvage Company which moved the damaged merchandise to the premises of the salvage company. Before the merchandise was moved, the latter company together with representatives of plaintiff and its insurer selected and list-

ed the damaged property. The selling price of the property listed in the inventory was checked and verified by a certified public accountant and was established to be $94,291.08.

Defendants contend this inventory was improperly admitted into evidence because it was merely the unsworn version of plaintiff's and the salvage company's employees who conducted the salvage operation. The salvage company had been employed by plaintiff's insurer. Since it was in the interest of the insurer to keep the loss as low as possible and further, since the inventory was made in the regular course of the salvor's business and it being a regular course of its business to make this kind of inventory, there is no question that the inventory was admissible under the provisions of the Federal Business Records Act, 28 U.S.C. § 1732.

Following the taking of the inventory and the removal of the damaged merchandise to the salvage company's premises, the salvor solicited bids for the goods. The highest bid received was $22,500 and this bidder was eventually persuaded to pay $25,000 for the lot. Some additional items were sold by miscellaneous sales for $43.95, making a total of $25,043.95 realized by the salvor and which sum the District Court found to be "the fair market price of this damaged merchandise."

The District Court in computing damages deducted 2¼% of the gross selling price of the inventoried merchandise as representing the amount plaintiff allowed its distributors for cash payments on invoices paid within ten days. The net fair market value of the damaged goods before the fire was fixed at $92,168.11. After deducting the $25,043.95 as the fair market value of the goods after the fire and a deduction of 10% of the difference, the Court found the damages amounted to $60,411.74. The 10% deduction amounted to $6,712.42 and represented, according to the District Court, the cost of plaintiff in disposing of the goods.

The applicable principle of the law of damages in a situation such as this has been set out by the Supreme Court in Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890. There, the Court said the owner of destroyed goods is entitled to be put in as good a position pecuniarily as if his property had not been destroyed and that the proper criterion to be used in measuring damages is the value of the thing destroyed. Whether the goods are totally destroyed or are only damaged, the fair market value is nonetheless the proper measure. Of course, if they are not totally destroyed and have a salvage value, this must be deducted in order to arrive at the net loss.

In arriving at the fair cash market value of the damaged merchandise before the fire, the use of the selling or list price less discount for cash sales is a reasonable and proper method of determining such value. People v. Irrizari, 5 N.Y.2d 142, 182 N.Y.S.2d 361, 156 N.E.2d 69.

Defendants argue that the case was tried on the erroneous theory that the loss of plaintiff's insurer, i. e., the amount paid under its policy, was used as the measure of the damages recoverable from defendants. The answer to this argument is that if the damages to plaintiff's property for which defendants are liable are arrived at according to proper legal principles, it is of no significance that they may coincide with the amount paid plaintiff by its insurer.

Defendants charge that plaintiff did not act reasonably so as to minimize the damages. In view of the fact that defendants have the burden of proof in this respect, we cannot say that the finding by the trial court that plaintiff did everything reasonably expected of it under the circumstances to reduce and mitigate the damages was clearly erroneous; on the contrary, considering the impracticality of unwrapping the wet merchandise and the difficulty in arresting the rusting process, we hold the evidence

fully sustains the conclusion that plaintiff acted in a prudent manner.

■ The final question raised by defendants is whether they, as beneficiaries under a trust agreement with the Chicago National Bank, are entitled to the benefits provided by an exculpatory clause in the lease between the bank as trustee and plaintiff. The pertinent part of the lease reads as follows:

"6. Lessor shall not be liable * * * for any damage done or occasioned by or from * * * water, sprinkler, * * * in, above, upon or about said buildings or premises, nor for any damage occasioned by water, * * * being upon or coming through the roof, skylights, trap door or otherwise, nor for any damages arising from acts, or neglect of co-tenants, or other occupants of the same building. * * *"

Defendants contend that the trust agreement was merely a device used to separate the legal from the beneficial interest in the land; that the lease was entered into not for the benefit of the bank but for defendants who were entitled to the rents and should be entitled to benefit by the exculpatory clause; and that the action of the District Court in striking the special defense was error.

The exculpatory clause here is valid and binding upon the parties signatory thereto since the lease was entered into prior to the passage of chapter 80 Ill. Rev.Stat. § 15a which declared such clauses "void as against public policy." However, these clauses have always been strictly construed against the drafting signatory. Moss v. Hunding, 27 Ill.App. 2d 189, 169 N.E.2d 396. Without reaching the question whether the exculpatory clause covers the damage in this case, we hold that the clause by its terms provided protection for the lessor alone and plaintiff is bound to no more than is contained in the lease.

The lease contains all of the terms between the bank as lessor and plaintiff as lessee. The trust agreement is not incorporated in it. The damages suffered by plaintiff resulted from the negligent acts of a co-tenant upon whom liability may be imposed. The fortuitous circumstance that such co-tenant was also the beneficiary under the trust agreement is of no consequence to plaintiff's action claiming damages from a negligent co-tenant *qua* tenant. The District Court properly sustained the motion to strike this defense.

■ In its cross-appeal, plaintiff seeks to recover an additional amount of $4,-773.42 as expenses incurred in salvaging and selling the damaged goods and the $6,712.42 which was deducted by the District Court as the "cost of disposing of goods." It is proper that the salvor's charge of $4,773.42 be allowed as an expense reasonably incurred by plaintiff. This represented an attempt by plaintiff to minimize the damages by employing the services of a salvor who would be expected, in order to increase its sales commission, to take such means as would insure the highest salvage price. As for the $6,712.42 deducted by the District Court there is no evidence supporting a deduction of 10% of the net loss. If a portion of plaintiff's general overhead expenses should have been considered a saving by not having to sell the damaged merchandise in the competitive market, the amount of such saving was not shown. Consequently, plaintiff was entitled to recover these additional amounts and judgment in the District Court should have been in the total amount of $71,897.58.

This cause is remanded to the District Court with direction to modify its judgment consistent with the views expressed herein.

The judgment appealed from, as modified in accordance with the foregoing remand, is hereby affirmed.