No. 22617.

RAYMOND MAISEL *v*. THE PEOPLE OF THE STATE OF COLORADO.
(442 P.2d 399)

Decided June 17, 1968.

Levi Martinez, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, George E. DeRoos, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

Raymond Maisel, hereinafter referred to as the defendant, was charged in a two count information with burglary and larceny. Upon trial a jury returned a verdict of not guilty as to the burglary charge, but at the same time convicted the defendant of larceny and fixed the value of the goods stolen at $57. Thereafter defendant's motion for new trial was denied and he was sentenced to a term of from two to five years in the state penitentiary. By writ of error the defendant now seeks reversal of the judgment and sentence.

A bit of background material will hopefully place the controversy in focus. Shortly before midnight a large rock was thrown through the front window of the Goodman Jewelry store in Pueblo and certain items of merchandise were taken from the display case. Im-

mediately thereafter two police officers espied two persons running from the aforesaid building. The police were able at that time to apprehend only one of the two persons seen running, namely one Warwick. The other person eluded the police, at least for the time being.

An hour or so later the defendant was arrested in the general neighborhood of the jewelry store and when asked by the police what he was doing the defendant volunteered that he was looking for his friend, Mr. Warwick.

The proprietor of the Goodman Jewelry testified that the following items of merchandise were stolen from her store: eight hunting knives, six pocket knives, two straight edge razors, and two transistor radios. About an hour after the theft the defendant left the aforementioned items with another of his friends, a Mr. Chavez.

Upon trial Warwick, for no doubt good and sufficient reason, was not a party defendant as he might well have been, but on the contrary appeared as a witness for the People. His testimony was that he did not burglarize the store in question, and that the defendant was the culprit who broke the window and stole the merchandise from the display counter. He testified that he was innocently imbibing a beer in a neighborhood tavern when the defendant happened in and recounted his burglarious and larcenous activities of the evening. By way of explaining his arrest while running away from the jewelry store and the glass particles found imbedded in the sole of his shoe, Warwick testified that after the defendant had informed him in the tavern about the burglary, the two of them returned to the jewelry store, and that he was then arrested moments later. In the course of his testimony Warwick volunteered that the defendant was a homosexual. And this utterance forms the basis for the defendant's main assignment of error.

When the witness Warwick made this statement the

defendant moved for a mistrial. The trial court denied this motion, but did strike the answer and instructed the jury to disregard the entire response. During the trial there was outward evidence, at least, of "bad blood" between Warwick and the defendant, who apparently had a falling out after the burglary. At least upon trial each accused the other of bribery and of generally attempting to induce the other not to testify or appear at the trial of the matter. It was in this particular setting, then, that Warwick's objectionable statement was made.

The granting or denying of a motion for a mistrial is a matter lying well within the sound discretion of the trial court and its exercise of this discretion will not be disturbed by us on review unless the record shows an abuse of that discretion. This rule is a salutary one and recognizes that the trial court, being on the scene, is in a better position than we to evaluate the situation and to assess the effect, if any, of a volunteer statement of the type uttered by Warwick. Our study of the record leads us to conclude that there was no abuse of discretion in the instant case. *Hammons v. People*, 153 Colo. 193, 385 P.2d 592 and *Hopper v. People*, 152 Colo. 405, 382 P.2d 540.

As noted above, the jury fixed the value of the goods stolen to be $57 and in this regard the defendant argues that there is no competent evidence as to value. The only witness to testify as to value was the owner and proprietor of the jewelry store. Over objection, she testified as to the *retail value* of each of the missing items. Her testimony established that the aggregate value of the stolen merchandise was $107, but, as indicated, the jury fixed the aggregate value to be only $57.

Is evidence of retail price evidence of market value? We conclude that it is, especially where as in the instant case we are dealing with items which were being sold over the counter on a more-or-less daily basis, and there is nothing to indicate that the retail price is higher than the true market value.

In *People v. Irrizari*, 5 N.Y. 2d 142, 182 N.Y.S. 2nd 361, 156 N.E. 2d 69, the New York Court of Appeals was faced with a similar situation. There some suits were stolen from a department store and the owner thereof was permitted to testify as to the wholesale price and the retail price of each suit. In holding that evidence as to retail price was proper, the New York Court of Appeals stated as follows:

"In short, market value, as the term is used in section 1305, denotes not the value of the goods in the market in which the owner had purchased them or in which he could replace them, *but the value in the market in which the goods were being traded, namely, the price at which they would probably have been sold in the regular course of business* at the time when and place where they were stolen. And so, we note, the courts have held in a number of other jurisdictions where the market value is likewise the criterion for determining the value of stolen property." (Emphasis added.)

Similarly in *Lauder v. State*, 233 Md. 142, 195 A. 2d 610, the Court of Appeals of Maryland stated that in the case of a stolen tape recorder, the State had the burden of proving its value and the "test is market value, and particularly retail value." So, the reasoning in both the *Irrizari* and *Lauder* cases is that in the absence of any evidence to the contrary, evidence of retail price is not only admissible but is perhaps the best evidence of market value.

Though *Lee v. People*, 137 Colo. 465, 326 P.2d 660 may not be on all fours, nevertheless we deem our determination that as concerns the value of the stolen property there is competent evidence to support the finding of the jury to be well within the rationale of that decision.

Finally, it is urged that the verdicts are inconsistent and that therefore the conviction on the larceny charge must be reversed. It is argued that inasmuch as the jury acquitted the defendant on the charge of burglary,

such acquittal "demands" an acquittal on the larceny charge. In other words, the not guilty verdict on the burglary charge is said to render impotent the guilty verdict on the larceny charge.

■ The issue as to the legal effect of so-called "inconsistent verdicts" is a vexing one upon which there is considerable diversity of opinion, both in and out of Colorado. In *Webb v. People*, 83 Colo. 1, 262 P. 906 we held where two verdicts are "irreconcilable, [and] each flatly contradicts, is repugnant to, and destroys the other, . . . [n]o valid sentence of guilt can be pronounced upon either verdict." However, as a result of *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 this court in *Crane v. People*, 91 Colo. 21, 11 P.2d 567 expressly overruled the *Webb* case. Accordingly, in *Crane* we held that consistency in verdicts is not necessary and we there sustained a guilty verdict "of conspiracy to obtain money by false pretenses" even though the jury had acquitted *Crane* of other offenses with which he had been charged. The rule announced in the *Crane* case was then followed in *Starr v. People*, 113 Colo. 268, 157 P.2d 135 where we declined to set aside a guilty verdict on a conspiracy to embezzle charge even though *on the same evidence* the jury acquitted the defendant of embezzlement.

However, in *Robles v. People*, 160 Colo. 297, 417 P.2d 232 we held that a guilty verdict on a charge of conspiracy to rob could not stand where the jury on the same evidence acquitted the defendant of the robbery charge. And the rule announced in *Robles* was then followed in *People v. Way*, 165 Colo. 161, 437 P.2d 535.

■ If the verdicts in the instant case were truly inconsistent, we would then have to determine whether the rule announced in *Robles v. People* should be extended to include the situation where, as here, a defendant is acquitted of burglary but convicted of larceny. However, our analysis of the record leads us to conclude that the verdicts in the instant case are not

necessarily inconsistent, and hence we need not here determine whether *Robles* is to be thus extended.

The testimony and the reasonable inferences deducible therefrom were in considerable conflict. Warwick, testifying for the state, tried to exculpate himself by involving the defendant. In turn, the defendant testified, in effect, that it was Warwick, not he, who was the real culprit. Additionally, the police officers testified as to several explanations offered by the defendant as to just how he obtained possession of the stolen items of merchandise. And there was evidence that some time after the rock had been thrown through the window both the defendant and Warwick returned to the jewelry store.

On this state of the record, with the jury not only being entitled to determine for itself the credibility of each witness, but also to determine what part of an individual witness's testimony is to be believed and what portion is not to be believed, we are disinclined to hold that the verdicts of the jury absolving the defendant of the burglary charge but convicting him of larceny are necessarily inconsistent. Indeed, on the record before us the jury might well have concluded that both Warwick and the defendant were in reality involved in this transaction. If this be the case, then, the role played by each, as well as the sequence of the events, is such that we cannot say that the verdicts are necessarily inconsistent. Accordingly, we do not here need to be concerned with what would be the result if the verdicts were in fact necessarily inconsistent.

The judgment is therefore affirmed.

Mr. Justice Hodges and Mr. Justice Kelley concur.