2 Ill. App.3d 483 (1971)
275 N.E.2d 670
CHICAGO TITLE AND TRUST COMPANY AS TRUSTEE UNDER TRUST NO. 44102, Plaintiff-Appellant,
v.
W.T. GRANT COMPANY, Defendant-Appellee.
No. 70-254.
Illinois Appellate Court  Second District.
October 27, 1971.
Rehearing denied December 17, 1971.
*484 John Demling, of Glen Ellyn, for appellant.
Corrigan, Mackay, Quetsch & O'Reilly, of Wheaton, for appellee.
Reversed and remanded.
Mr. JUSTICE GUILD delivered the opinion of the court:
The defendant tenant, W.T. Grant Company, rented retail store space located in a shopping plaza from plaintiff landlord, Chicago Title and Trust Company, at a monthly rental of $5,833.33. The relevant provisions of the written lease between the parties are these:
"The Landlord shall promptly make all repairs and replacements * * * which may be necessary to maintain the demised premises in a safe, dry and tenantable condition * * *.
The Landlord agrees to indemnify and hold the Tenant harmless from and against all loss, damage or injury to the Tenant's store and to the Tenant's merchandise, fixtures and other property therein, due to or occasioned by any overflow or leakage or defect of exterior walls or the roof * * * or by any failure on the part of the Landlord to make any of the repairs herein agreed to be made by the Landlord, and also from and against all reasonable expense incurred by the Tenant in connection therewith.
Any sums due the Tenant from the Landlord under the provisions of this lease or arising out of Landlord's failure to comply with or perform any of its terms may be deducted from the rent * * *."
On February 15, March 8, and March 16, 1965, the tenant allegedly sustained damage to merchandise contained in the store due to roof leaks. Exhibits in the record include a telegram on March 9, 1965, to landlord's agent reporting serious roof leakage at the Glen Ellyn store, and a letter to Chicago Title and Trust Co. dated May 3, 1965, stating the store manager was being instructed, by carbon copy, to hold fully damaged merchandise for inspection and to sell partially damaged merchandise at marked down prices in order to obtain maximum salvage. After unsuccessful negotiations relating to the merchandise, the tenant withheld rent for July, 1969, the landlord brought suit to collect the amount owing for the month, $5,833.33, and the tenant counter-claimed for property damaged by roof leakage in the amount of $8,844.96.
The trial court entered judgment for the W.T. Grant Company in the sum of $8,844.96 and found the issues against the plaintiff on their suit *485 for the months rent in question. There is an obvious error in this regard as the W.T. Grant Company had withheld rent in the sum of $5,833.33 which would in effect give the W.T. Grant Company a finding of $14,678.29 which counsel for the W.T. Grant Company concedes is incorrect.
At trial without a jury, the landlord's agent testified he had been upon the roof about 25 to 50 times during the period of the leakage problem, and attributed most of the water coming into the store to open hatchway doors upon the roof which serviced tenant's equipment and to the installation by both parties of tenant's roof sign above the checkout area where no merchandise was displayed. On one occasion the witness had seen a display table covered with plastic with water dripping about the edge into pans on the floor. He said the roof had leaks in it but very little of the water was entering the store through them.
In this appeal brought by the landlord, a secondary issue raised in oral argument is that judgment for the tenant based on damage to merchandise is against the manifest weight of the evidence as a number of tenants' employees testified to seeing water dripping through the ceiling tiles onto merchandise displayed below every time there was rain or melting snow, but only the landlord's agent, a civil engineer, undertook to state the origin of this water, and he also testified to showing the store manager open hatchway doors upon the roof several times during the problem period which he said the manager claimed were being blown open by the wind.
 1 We agree with landlord's counsel that the direct evidence or water originally entering through roof leaks is minimal and that other explanations have been offered for the repeated circumstances of water dripping through the ceiling below. In entering judgment for the tenant, however, the trial court must necessarily have concluded that leakage or defects in the roof were the source of the damage. There is sufficient evidence in the record to sustain the trial court's finding of fact, and while the evidence is conflicting, an opposite conclusion is not so clearly apparent that the decision below can be disturbed. Lipschultz v. So-Jess Management Corp. (1967), 89 Ill. App.2d 192, 203; 232 N.E.2d 485.
The basic issue in this case is whether the plaintiff is entitled to recover the retail selling price or the wholesale price of the damaged merchandise. The amount of judgment for the tenant, $8,844.96, is based on the total anticipated retail sale price of all damaged items, such as dresses, coats, drapes, shirts, cosmetics, and Easter eggs, less the total amount realized by W.T. Grant Company from the markdown sale of partially damaged merchandise. Landlord's counsel vigorously contends *486 this basis is erroneous, claiming damages are measureable by the cost price of the merchandise to W.T. Grant Company plus all attendant reasonable expenses as shipping and handling, less the markdown sale proceeds.
Calculation of the money judgment is based on entries on a markdown form regularly used in the course of Grant's business with no indication of the cost price. Tenant's district manager testified that the merchandise was purchased directly from various sources by the Glen Ellyn store, that the local store maintains a filled order record which indicates the retail sale price but not the cost price, and that upon local receipt of merchandise invoices for it are approved and sent to the New York office for payment with a discount usually taken for prompt payment. The local filled order record or invoices covering the damaged merchandise in question had been destroyed about two years before the trial, which commenced July 21, 1970, and the witness had no idea what the New York office did with invoices after paying them nor did he know which of a variety of suppliers might have sold the particular damaged merchandise to the Glen Ellyn store. There was no evidence on the customary percentage or markup over cost to obtain sale price.
In either event obviously the amount received from the marked down sale of the damaged merchandise must be deducted. The plaintiff contends of course that it is entitled to the retail price it would have received from the sale of every item in question. No consideration is given to damage to the merchandise that might be caused by customers of the store, shoplifting, obsolescence, or a mark down on merchandise that the store might be unable to sell at the regular retail price.
Oddly enough there appears to be no case in Illinois directly in point which considers the question of whether or not a tenant in a retail store is entitled to recover the wholesale or the retail price for damages incurred upon his merchandise whether through the landlord's negligence or under the terms of his lease. There are comparatively few cases in other states determinative of this question.
 2, 3 The tenant here contends that under the terms of the lease that it is indemnified "against all loss, damage or injury" and therefore it should recover for any or all loss of profits that it might have incurred. With this, this court does not agree. Tenant contends that contracts between the parties must be construed as written, and with this we agree. Had the parties intended that "loss" included loss of potential profits, the lease should have so stated.
In Whaley v. Crutchfield (1956), 294 S.W.2d 775, the question posed was whether or not a car dealer should recover the retail market value of his car or the wholesale value. The court in holding that the measure *487 of damage was the difference between the wholesale price to the car dealer-plaintiff and the market value after the damage to the vehicle went on to make the following statement:
"Ordinarily, the measure of damages is the retail market value of the property immediately before the damage occurs, and immediately thereafter. [Citation.] But, that rule does not apply where the property involved is part of a stock in trade of a business concern. In Sedgwick on Damages, 9th Edition, Volume 1, § 248a, it is said: `When in the ordinary case a value is to be found for a single thing, the value is what that single thing would sell for; which amounts to the retail value of it. But when a court is dealing with a stock of goods held for sale, or even with a portion of such a stock, the value to be found is its value as a stock or part of a stock of goods, that is, its wholesale value, without the profit of resale which enters into the retail value; for at the time of valuation that profit has not yet been earned, or, to put the matter in another way, the process of distribution, which brings the goods into the hands of the consumer and thus gives them their final increment of value, has not yet taken place.'"
In a New York case directly in point, Dubiners Bootery Inc. v. General Outdoor Advertising Co. 200 N.Y. Supp.2d series 757 (1960) it would appear that damage was therein incurred to the stock of the tenant operating a retail store through the negligence of the landlord where the water leaked through the roof upon the merchandise, and is most comparable to the instant case. The court said:
"The measure of damages is not the retail selling price but replacement cost and any damages actually sustained by reason of the absence of the articles while in the process of replacement." * * * "While damages are to be compensatory and need not be calculated with mathematical certainty to permit recovery [citation], there was insufficient proof to form a basis of computation for any alleged loss of profits. Accordingly, the sum provided for in the event of stipulation is the cost price less the salvage received."
It would appear that in this case the New York court inferred that there might be some loss of profits by reason of the absence of the articles for sale.
In an Idaho case, Skaggs Drug Centers, Inc. v. City of Idaho Falls (1965), 407 P.2d 695 again a case of damage to retail merchandise in a store by the city who were found to have caused the flooding, the court affirmed the jury verdict for the amount of damages stating that the measure of damage was
"the market value of such stock in trade prior to their destruction, in the absence of any evidence to the contrary, is the price of such goods *488 in the usual markets where they had been purchased, plus delivery costs. The only evidence in the record regarding damages is the cost of the damaged goods and such evidence is uncontroverted. It is both reasonable and just to assume that the fair value of the merchandise is in fact the same as its cost. [citations]"
In substance, the finding of the court here was that the wholesale cost price to the tenant plus delivery cost was the true measure of damages.
Appellee cites, and relies upon People v. Irrizari (1959), 5 N.Y.2d 142, 182 N.Y.S.2d 361, 156 N.E.2d 69, for the proposition that the retail value of the merchandise is the proper measure of damages. In Irrizari the court was determining the "market value" of the merchandise stolen from Lord and Taylor, Best's and B. Altman, the determination being important as to whether the defendant was guilty of grand larceny. However, it is to be specifically noted that the court was interpreting section 1305 of the Penal Law, Consol Laws of New York, c. 40 which provides "the market value of the thing stolen is deemed its value." The court goes on to illustrate the case of a thief stealing a railroad ticket, and states that, while the value of the stolen passenger ticket would not be the replacement cost of the service or of the ticket to the railroad but the amount that the thief would have been required to pay had he purchased the ticket. The court concludes:
"In short, market value, as the term is used in section 1305 denotes not the value of the goods in the market in which the owner had purchased them * * * but the value in the market * * * the price at which they probably would have been sold in the regular course of business * * *" or "the amount which the thief would have been required to pay for them had he purchased them, that is their retail value." (Emphases supplied.)
Thusly this case, which in effect is an interpretation of the provisions of the criminal code of New York, can scarcely be cited for the proposition that a tenant shall recover the retail price of the merchandise damaged, either under an agreement for indemnity or due to the negligence of the landlord.
Counsel for lessee has also cited H.K. Porter Company v. Halperin (1961), 297 F.2d 442, in which the cause of action arose in Illinois and was heard in a federal district court. A rather complex formula for ascertaining damages was used and the federal court cited as authority People v. Irrizari, supra, for the use of the retail price less discount for cash sales. In Porter the district court deducted a percentage allowed for cash payments by the merchant and deducted another percentage for the cost to the merchant in disposing of the goods and after computing salvage value arrived at a figure which it felt was proper. This court *489 refuses to follow the doctrine of the Porter case and feels that the proper measure of damages in a situation such as the instant case is wholesale price to the merchant under the doctrine enunciated in Whaley, Dubiners Bootery and Skaggs Drug Centers, supra.
Inasmuch as the trial court allowed the full retail price for the damaged merchandise less the salvage value rather than using the wholesale value as we have indicated above, we reverse and rmand for a new trial on the issue of damages only.
Reversed and remanded.
ABRAHAMSON and DIXON, JJ., concur.