EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Gerardo Ayala García.<br><br>Acusado-recurrido | Certiorari<br><br>2005 TSPR 17<br><br>163 DPR \_\_\_\_ |

Número del Caso: CC-2004-163

Fecha: 25 de febrero de 2005

Tribunal de Apelaciones:

        Región Judicial de San Juan

Juez Ponente:

        Hon. Zadette Bajandas Vélez

Abogado Recurrido:

        Lcdo. Fernando L. Abreu Arias

Oficina del Procurador General:

        Lcdo. Roberto J. Sánchez Ramos
        Procurador General

Materia: Apropiación Ilegal Agravada

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                   CC-2004-163      Certiorari

Gerardo Ayala García

    Acusado-recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río

OPINIÓN

San Juan, Puerto Rico, a 25 de febrero de 2005.

Nos corresponde resolver si para determinar el valor de un bien que ha sido objeto de apropiación ilegal en un establecimiento comercial, el precio marcado por el comerciante constituye evidencia *prima facie* del valor de ese bien en el mercado, y suficiente en derecho para establecer el grado del delito, o si por el contrario, es necesario que el Ministerio Público ofrezca prueba adicional a los fines de establecer cuál es el valor de ese bien en el mercado.

I.

El 19 de febrero de 2002, aproximadamente a la 1:50 p.m., el señor Eddie Rivera González, agente de seguridad de la tienda *Sears* del centro comercial Plaza las Américas, se encontraba brindando, como parte de sus tareas rutinarias, una ronda preventiva en el segundo nivel de la mencionada tienda. Mientras el señor Rivera discurría por el área de caballeros, le llamó la atención la presencia del señor Gerardo Ayala García, pues éste se conducía a paso acelerado y mirando erráticamente de lado a lado. El señor Rivera mantuvo vigilancia sobre el señor Ayala, y observó cuando éste se acercó a un estante que contenía pantalones de vestir, sustrajo una bolsa del bolsillo izquierdo de su pantalón, e introdujo en ella cinco pantalones de la marca *Haggar*. Acto seguido, se dirigió a las escaleras eléctricas dentro de la tienda, descendió al primer nivel del establecimiento, pasó cerca de más de una caja registradora sin efectuar pago alguno, y finalmente salió de la tienda.

Una vez fuera de la tienda, el señor Rivera, en compañía del señor Ismael Núñez, también agente de seguridad de la tienda *Sears*, le ordenó al acusado que se detuviera y se identificó como agente de seguridad de la mencionada tienda. En ese momento, el señor Rivera logró tomar posesión de la bolsa conteniendo la mercancía, no obstante, el señor Ayala emprendió su huida, suscitándose

entonces una persecución a pie en el exterior del centro comercial.

En medio de la persecución, el señor Rivera se percató de la presencia de una patrulla de seguridad de la empresa *Rangers*, quienes prestan servicios en el centro comercial Plaza las Américas. El señor Rivera llamó la atención de los ocupantes de la patrulla haciendo gestos con sus manos, indicándoles que se encontraba en persecución del señor Ayala. Los ocupantes de la patrulla se unieron a la persecución y lograron detener al señor Ayala.

Una vez detenido, fue transportado al cuartel de la Policía de Puerto Rico ubicado en el mismo centro comercial. Allí, el señor Rivera contabilizó la mercancía ocupada al señor Ayala.

A raíz de lo antes expuesto, el señor Rivera completó un informe sobre el incidente, titulado "Informe de Incidente del Departamento de Protección de Activos". Éste contenía una descripción de los hechos acontecidos, así como de la mercancía objeto de la apropiación ilegal. Los bienes apropiados fueron cinco (5) pantalones de vestir de la marca *Haggar*, tres de ellos con un precio marcado de cuarenta ($40.00) dólares, y dos con un precio marcado de cuarenta y cinco ($45.00) dólares, para un valor total de doscientos diez ($210.00) dólares.

Por estos sucesos, el 14 de marzo de 2002, se presentó acusación contra el señor Ayala por el delito de apropiación ilegal agravada, tipificado en el Artículo 166

del Código Penal de Puerto Rico, 33 L.P.R.A. 4272. El Tribunal de Primera Instancia, previa renuncia del acusado a su derecho a juicio por jurado, y luego de celebrado el juicio, declaró culpable al señor Ayala por el delito imputado, y fue sentenciado a cumplir seis (6) años de cárcel.

Inconforme, el señor Ayala presentó escrito de apelación ante el Tribunal de Apelaciones. En éste planteó los siguientes errores;

(1) Incidió el Honorable Juzgador de los hechos al encontrar al señor Gerardo Ayala García culpable por infracción al Art. 166 del Código Penal cuando la prueba desfilada en su contra no fue suficiente en Derecho para desvanecer la presunción de inocencia más allá de duda razonable.

(2) Que no se probó más allá de toda duda razonable que el valor de la mercancía excediera el valor de $200.00

En el alegato presentado por el apelante ante el Tribunal de Apelaciones, se planteó que el "valor en el mercado" de la mercancía apropiada ilegalmente, para fines de considerar el delito como uno grave, no puede ser determinado conforme al precio de venta marcado en los pantalones, toda vez que éste corresponde al costo de la mercancía más la ganancia potencial que desea la tienda con la venta de la misma. Alegó además que la pérdida real de *Sears*, a consecuencia de la apropiación ilegal, fue el costo de adquisición de la mercancía y que los Artículos 165 y 166 del Código Penal protegen la pérdida real de la persona y no sus ganancias. A base de esto, señaló que el

Ministerio Público no probó más allá de duda razonable que la pérdida real de *Sears* fuera de doscientos diez ($210.00) dólares.

Por su parte, en el alegato presentado ante el Tribunal de Apelaciones por el Procurador General de Puerto Rico, éste señaló que el precio de venta asignado por el dueño de la mercancía equivale al valor o precio de ésta en el mercado, por tanto debía ser considerado como el valor del bien apropiado ilegalmente.

Ante estos planteamientos, el Tribunal de Apelaciones señala que el valor a considerarse no debe ser el que le atribuye un establecimiento comercial específico a su mercancía, sino el valor que los mismos poseen en el mercado y al cual se pueden adquirir en el área comercial inmediata. Añade el tribunal apelativo que determinar lo contrario traería como consecuencia que dos personas acusadas de apropiarse de idéntica mercancía en tiendas adyacentes, cuyos precios son distintos, sean convictos una por el delito en su modalidad grave y la otra menos grave.

Señala además el Tribunal de Apelaciones que le corresponde al Ministerio Público probar más allá de la duda razonable el valor de los bienes apropiados con prueba independiente del precio marcado en los pantalones. Que a esos fines deberían considerarse además otros factores, como la disponibilidad de la misma mercancía en otros establecimientos comerciales, el precio que se le asigna a

la mercancía en áreas limítrofes, y la demanda del producto al precio indicado por la tienda.

Concluye el Tribunal de Apelaciones que la gravedad del delito de apropiación ilegal no puede quedar a la merced de los establecimientos comerciales. Por estas razones, revoca la sentencia emitida por el Tribunal de Primera Instancia y ordena la devolución del caso a ese tribunal para que se sentencie al acusado por el delito de apropiación ilegal en su modalidad menos grave, a tenor con el Artículo 165 del Código Penal de Puerto Rico. 33 L.P.R.A. sec. 4271.

De esta sentencia del Tribunal de Apelaciones recurre ante nos el Procurador General de Puerto Rico y esboza el siguiente señalamiento de error;

> Erró el Tribunal de Apelaciones al resolver que, como cuestión de Derecho, en todo caso de apropiación ilegal de mercancía en un establecimiento comercial, el precio marcado en la mercancía no es suficiente para probar el valor de dicha mercancía, norma bajo la cual el fiscal tendría siempre que presentar evidencia independiente al precio marcado para probar dicho valor, aún cuando la defensa no haya presentado prueba alguna sobre el valor en el mercado de la mercancía.

Mediante Resolución de 29 de marzo de 2004 expedimos el auto solicitado. Perfeccionado el Recurso, con el beneficio de las comparecencias de las partes, estamos en posición de resolver.

## II.

El delito de Apropiación Ilegal Agravada, por el cual fue convicto y sentenciado el señor Ayala, está tipificado

en el Artículo 166 del Código Penal de Puerto Rico, 33

L.P.R.A. sec. 4272. Éste reza de la siguiente manera;

> Será sancionada con pena de reclusión por un término fijo de diez (10) años toda persona que cometiere el delito previsto en la sec. 4271 de este título [apropiación ilegal] con la concurrencia de cualquiera de las siguientes circunstancias:
>
> (a) ...
>
> (b) Apropiándose de bienes cuyo valor fuere de doscientos (200) dólares o más.
>
> (c) ...
>
> (d) ...

Partiendo de lo establecido en el artículo antes citado, hemos establecido que se incurre en apropiación ilegal cuando una persona ilegalmente se apropiare sin violencia ni intimidación, de bienes muebles pertenecientes a otra persona, *Pueblo v. Padró*, 105 D.P.R. 713, 714, (1977), siendo el elemento esencial del delito la apropiación de bienes de propiedad ajena. *Pueblo v. Miranda*, 117 D.P.R. 188, 193 (1986). En el caso ante nuestra consideración, no existe controversia en cuanto a que se satisface tal elemento, así como el requisito de intención específica que conlleva tal delito. *Pueblo v. Miranda, supra*, p.194. No obstante, la controversia estriba en torno al valor de los bienes ilegalmente apropiados, pues de acuerdo al valor que se adjudique a los mismos, será la modalidad – agravada o menos grave— bajo la cual debe recaer la convicción por los hechos particulares de

este caso. Esto pues, según el estatuto que regula este delito, de determinarse que el valor de los bienes es menor de doscientos ($200) dólares, conllevaría convicción por el delito en su modalidad menos grave, por el contrario, de determinarse que el valor de los bienes es de doscientos ($200) dólares o más, se constituiría el delito en su modalidad agravada.

A pesar de que el asunto ante nuestra consideración trata una controversia novel desde la perspectiva del valor de bienes ilegalmente apropiados en un establecimiento comercial, este Tribunal ha hecho expresiones previas con respecto a la determinación de dicho valor cuando la apropiación de los bienes ha tenido lugar fuera del ámbito propiamente comercial.

A esos fines, hemos establecido que la norma para determinar tal valor, es el valor en el mercado, no el costo original, en la época y en el lugar en que se cometió el delito. *Pueblo v. Rivera*, 75 D.P.R. 298 (1953). El concepto de "valor en el mercado", desde la perspectiva empresarial, ha sido definido como "el precio que el vendedor está dispuesto a consentir y que el comprador está dispuesto a pagar". *Diccionario de Administración y Finanzas*, J.M. Rosenberg, p.431.

Esta norma de utilizar el valor en el mercado para determinar el valor de los bienes apropiados ilegalmente, es utilizada de manera uniforme por todas las jurisdicciones de los Estados Unidos, incluyendo a Puerto

Rico. Inclusive, gran parte de los estatutos modernos que regulan el delito de apropiación ilegal, incluyen expresamente en su texto la norma de utilización de valor en el mercado para establecer el valor de los bienes apropiados ilegalmente. Véase: Wayne R. LaFave, *Substantive Criminal Law*, 2nd Ed., p.81, nota al calce 23. Muchas jurisdicciones de los Estados Unidos se han expresado propiamente sobre controversias muy similares a la que hoy se encuentra ante nuestra consideración, y han establecido cual ha de ser la manera de determinar ese "valor en el mercado". A manera de ilustración, expondremos lo que han establecido algunos tribunales de los Estados Unidos a esos fines.

En el estado de California, jurisdicción de donde mayor influencia obtuvo nuestro Código Penal, y en particular el delito imputado en el caso de autos, el propio Código Penal establece que "in determining the value of the property obtained..., the reasonable and fair market value shall be the test...". West's Ann. Cal. Penal Code § 484(a). El caso normativo en ese estado en cuanto al tema que nos ocupa, y que a su vez ha sido seguido por la mayoría de las jurisdicciones en los Estados Unidos, es *People v. Tijerina*, 81 Cal. Rptr. 264, (1969). En éste, el señor Tijerina fue acusado y convicto por el delito de apropiación ilegal agravada [grand theft], por haberse apropiado ilegalmente de una serie de artículos de vestimenta masculina en una tienda por departamentos. El

acusado planteó que el precio de venta de los bienes apropiados no establecía su justo y razonable valor en el mercado, y que por tal razón esa evidencia era insuficiente para sostener una convicción por apropiación ilegal agravada. Ante este planteamiento, el Tribunal estableció; "[i]n the absence of proof, however, that the price charged by a retail store from which merchandise is stolen does not accurately reflect the value of the merchandise in the retail market, that price is sufficient to establish the value of the merchandise…". *People v. Tijerina*, *supra*, pp. 265-266.

Esta norma fue ratificada más adelante en *People v. Brown*, 188 Cal. Rptr. 324 (1982), donde el Tribunal recalcó que "[a]bsent contrary evidence, price charged by retail store is sufficient to establish value of merchandise in prosecution for grand theft". *People v. Brown*, *supra*, p.326. En *People v. Pena*, 135 Cal. Rptr. 602 (1977), el Tribunal provee una definición del concepto "valor en el mercado". A esos fines establece que "[i]n determining value of property stolen to ascertain whether defendant committed offense of grand theft, 'fair market price' was highest price obtainable from willing buyer by willing seller, neither of whom was forced to act". *People v. Pena*, *supra*, p.604. En similares términos se expresó el Tribunal Supremo de New Hampshire cuando estableció que "[s]uch value is the market value, or the price which the property will bring in a fair market, after fair and

reasonable efforts have been made to find the purchaser who will give the highest price for it". *State of New Hampshire v. Moody*, 113 N.H. 191, 192 (1973).

El Tribunal Supremo de Connecticut estableció que el valor en el mercado para los bienes apropiados ilegalmente es "the price at which they would probably have been sold in the regular course of business at the time when and the place where the attempted theft occurred…". *State of Connecticut v. Gyuro*, 156 Conn. 391, 398 (1968). En síntesis, existe una tendencia dirigida a tomar como valor en el mercado, el precio que los consumidores hayan pagado, o estén dispuestos a pagar por el artículo o mercancía en cuestión, es decir, siempre que haya consumidores dispuestos a pagar el precio de venta otorgado por un comerciante a sus bienes, ese se considerará el justo valor en el mercado, aun cuando otros establecimientos comerciales puedan ofrecer ese mismo producto por un precio menor.

Al resolver una controversia similar a la que hoy enfrentamos, el Tribunal Supremo del estado de Colorado se formuló y respondió la siguiente interrogante; "Is evidence of retail price evidence of market value? We conclude that it is, specially where as in the instant case we are dealing with items which were being sold over the counter on a more-or-less daily basis, and there is nothing to indicate that the retail price is higher than the true market value". *Maisel v. The People of the State*

*of Colorado*, 166 Colo. 161, 164 (1968). Es decir, si la mercancía objeto de apropiación ilegal es una que ha sido objeto de transacciones de compraventa con relativa frecuencia, esto es indicativo de que el precio de venta otorgado por el comerciante corresponde al valor real en el mercado de esa mercancía.

En el estado de Pennsylvania se estableció que "[w]hen the property is stolen from a merchant, the retail or contract price is *prima facie* evidence of market value", *Commonwealth of Pennsylvania v. Hanes*, 522 A.2d 622 (1987). En el estado de Maryland se estableció que "the test is market value, and particularly retail value", *Lauder v. State of Maryland*, 195 A.2d 610 (1963). El Tribunal Supremo de Minnesota estableció que para propósitos de bienes apropiados ilegalmente, el valor de los mismos será "the retail market value at the time of the theft". *State of Minnesota v. Mc Donald*, 312 Minn. 320, 322 (1977).

En la aplicación e interpretación del *National Stolen Property Act*, 18 U.S.C.A. §2314, estatuto federal que tipifica como delito la transportación interestatal de bienes apropiados ilegalmente que tengan un valor de cinco mil ($5,000) dólares o más, los tribunales federales también han tenido oportunidad de expresarse con relación a esta controversia, relacionada a cuál será el valor a otorgarse a bienes objeto de apropiación ilegal, y cómo se determinará tal valor. El propio estatuto define el concepto de "valor" como; "the face, par, or market value,

whichever is the greatest, and the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value thereof". Siguiendo esa definición, la casuística federal ha establecido que el valor en el mercado del bien apropiado, en la época y el lugar en que se cometió el delito, ha de ser el estándar apropiado para determinar el valor del bien. Véase *Hunsten v. United States*, 95 F.2d 168, (1938). Igualmente, los tribunales federales mayoritariamente han aprobado el uso del precio de venta al detal [retail value] como el valor correspondiente al valor en el mercado. En *U.S v. Robinson*, 687 F.2d 359, (C.A. Ala., 1982), el tribunal estableció que el valor en el mercado de bienes que han sido objeto de apropiación ilegal es "the price a willing buyer would pay a willing seller either at the time and the place that the property was stolen or at any time during the receipt or concealment of the property". En ese mismo caso se estableció además, citando a *United States v. Perry*, 638 F.2d at 865, que "[i]f property is stolen from a retail merchant the market value is the retail sales price. If property is stolen from a wholesale merchant the market value is the wholesale price". *U.S v. Robinson*, *supra*, p.360.

El acusado esboza además el argumento de que el valor a ser considerado debe ser el costo que tuvo la mercancía para la víctima de la apropiación ilegal, es decir, el

precio de venta al por mayor [wholesale value], ya que ese valor representa la pérdida real que tuvo el propietario. Ante un planteamiento similar, en un caso de gran relevancia a los fines de la controversia ante nos, el Tribunal de Apelaciones del estado de New York hizo una serie de expresiones que nos son de gran utilidad. Ese tribunal expresó que en aras de determinar el valor de bienes apropiados ilegalmente "their value will be not their replacement cost to the company, or even the cost of the service, but the amount which the thief would have been required to pay for them had he purchased them, that is, their retail value". *People of the State of New York v. Irrizari*, 5 N.Y.2d 142, 145 (1959). Se estableció además en ese mismo caso que "[t]he vital finding which the jury must make is the price at which the property would have been sold if had not been stolen and any evidence bearing on that question may properly be considered. It would be open to the accused to show, for instance, that the list price was much higher than the price being paid for similar merchandise in the vicinity…". *People of the State of New York v. Irrizari, supra,* pp.146-147.

Otros tribunales han ido aún más lejos al establecer que los conceptos "valor en el mercado" y "precio de venta" se consideran sinónimos a los fines de determinar el valor de un artículo apropiado ilegalmente. Véase *State of Connecticut v. White*, 437 A.2d 145, 148 (1981).

Aceptar el planteamiento antes expuesto por el acusado, a los fines de que se utilice como valor del bien apropiado ilegalmente, el precio que el comerciante pagó por el mismo, sería ignorar crasamente las realidades de los mercados comerciales. Es decir, desde el momento en que un comerciante paga una determinada cantidad de dinero para obtener un bien destinado a la re-venta, hasta que éste finalmente está disponible para ser vendido al consumidor, existe una serie de factores que inevitablemente aumentan el valor que tuvo ese producto al momento de ser adquirido por el comerciante. Salarios de los empleados, gastos de transportación, consumo de energía eléctrica, publicidad, equipos de oficina, y otros gastos operacionales, son sólo algunos de los factores que modifican y elevan el valor en el mercado que realmente corresponde a determinado producto. De manera que la pérdida real no es sólo el precio que el comerciante pagó por el bien apropiado, sino el valor acumulativo que el mismo ha adquirido. A esos efectos, en *People v. Irrizari*, *supra*, se hicieron además las siguientes expresiones:

> To accept wholesale value in such a case would be to ignore the facts of economic life. Stated very simply, it is the retailer's function in our economy to move goods to the consuming public and, in the process, the market value of the goods is unquestionably enhanced. In addition, the retailer expends money on various services -- including advertising, promoting, display and packaging -- in order to increase the interest of the public and make it more willing to buy. When, therefore, a thief steals an article

> from a department store, he steals something having a market value quite different from that which it had in the hands of the wholesaler. *People v. Irrizari*, *supra*, p.146.

De todo lo antes expuesto, podemos concluir que la mayoría de los tribunales, aunque con ciertas variaciones semánticas, han otorgado gran deferencia al precio marcado por el comerciante como representativo del valor real en el mercado del bien apropiado ilegalmente.

Sin duda, el Ministerio Público tiene que presentar prueba conducente a establecer el valor del bien ilegalmente apropiado, a los fines de probar todos los elementos del delito cometido en su modalidad agravada. Sin embargo, este Tribunal hoy resuelve que, contrario a lo decidido por el Tribunal de Apelaciones, prueba presentada sobre el precio de venta marcado en un artículo en un establecimiento comercial satisface ese requisito. Ese precio marcado por el establecimiento comercial constituye evidencia *prima facie* del valor de ese producto en el mercado. Considerando que el valor en el mercado de un bien se determina tomando en cuenta el lugar y el momento en que ocurrió la apropiación ilegal, ese precio marcado es sin duda un reflejo del valor en el mercado de ese bien. Está en la esencia misma del éxito de una empresa mantener sus precios dentro de los valores aceptados por el mercado en que se encuentren operando, pues de lo contrario estarían atentando en contra de sus mejores intereses comerciales.

Como establecimos en *Pueblo v. Rivera*, *supra*, 304, "testimonio del valor en el mercado, si no es controvertido y si la corte sentenciadora lo cree, es suficiente para sostener una convicción de hurto mayor".

Por tanto, la defensa tendrá la oportunidad de presentar prueba a los fines de demostrar que el precio de venta otorgado a un producto comercial, no refleja en realidad su justo valor en el mercado. A pesar de esto, los tribunales y adjudicadores concederán gran deferencia al precio de venta marcado en el producto objeto de la apropiación ilegal. Aun de presentarse prueba de que el bien ilegalmente apropiado tiene un costo menor en algún establecimiento comercial cercano, eso no necesariamente significa que el precio otorgado en el lugar donde se cometió el delito no corresponda al valor en el mercado de ese bien.

El Ministerio Público no tiene la obligación de demostrar con prueba adicional el valor en el mercado de la mercancía apropiada ilegalmente, a menos que ésta sea debidamente rebatida. Igualmente, no se requiere testimonio pericial para determinar el valor en el mercado de un producto. Véase *Pueblo v. Bonilla*, 83 D.P.R. 295. Cualquier prueba presentada en contrario de parte de la defensa a los fines de impugnar el valor en el mercado de la mercancía ilegalmente apropiada, será un elemento más que le corresponderá a los jueces y jurados adjudicar. Es decir, de suscitarse alguna controversia en cuanto a cuál

será el valor real de un bien apropiado ilegalmente, por existir prueba conflictiva a esos fines, serán los jueces o jurados los llamados a pasar juicio sobre la misma.

Entendemos además, que la prueba presentada del precio de venta marcado en la mercancía objeto de apropiación ilegal, de no ser oportunamente rebatida, constituye prueba suficiente en derecho para establecer el grado del delito, en este caso, el de apropiación ilegal en su modalidad agravada. "Prueba suficiente en derecho" significa que la evidencia presentada, además de ser suficiente, tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, (1991). Esta prueba a su vez constituye prueba satisfactoria para establecer el valor del bien apropiado como uno de los elementos del delito de apropiación ilegal agravada.

Si bien no estamos obligados a seguir las decisiones y opiniones emitidas por los tribunales de otras jurisdicciones, nuestro razonamiento hoy nos conduce a la misma conclusión alcanzada por la mayoría de las jurisdicciones de los Estados Unidos. Resolver lo contrario sería imponer una carga onerosa sobre el Ministerio Público, y apartarnos injustificadamente de los mejores intereses de la justicia.

Ante la expresión del Tribunal de Apelaciones en cuanto a que "la gravedad de este delito no puede quedar a

la merced de los establecimientos comerciales", *Sentencia del Tribunal de Apelaciones*, p.19, entendemos que con toda probabilidad, la gravedad o no de un delito podría ser lo último que un comerciante considere al momento de tomar la determinación sobre qué precio asignará a su mercancía. Existe un sinnúmero de factores que un comerciante evalúa al tomar la decisión de asignar un precio a su mercancía, incluyendo la deseabilidad de que ese precio asignado sea competitivo. El que eso a su vez tenga el efecto de en su día convertir la comisión del delito en agravada, es meramente una consecuencia incidental.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones emitida el 26 de enero de 2004, y se confirma la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 12 de septiembre de 2002.

Se dictará sentencia de conformidad.


                                        BALTASAR CORRADA DEL RÍO
                                        JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                       CC-2004-163
      Certiorari

Gerardo Ayala García

    Acusado-recurrido

SENTENCIA

San Juan, Puerto Rico, a 25 de febrero de 2005.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones emitida el 26 de enero de 2004, y se confirma la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 12 de septiembre de 2002.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente *"por entender que tratándose de un caso penal, en el que está en juego la libertad de un imputado, y no una mera cuestión de derecho comercial, el dictamen del Tribunal de Apelaciones constituye la apreciación correcta de la norma jurídica aplicable"*.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo