(No. 25611.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD FOGNINI *et al.* Plaintiffs in Error.

*Opinion filed June 14, 1940.*

B. JAY KNIGHT, J. E. GOEMBEL, and FREDERICK H. HAYE, for plaintiffs in error.

JOHN E. CASSIDY, Attorney General, ROBERT E. NASH, State's Attorney, and A. B. DENNIS, (A. B. LOUISON, and WM. H. GATES, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Edward Fognini, Gerardo Perez and Lillian Fognini, were jointly indicted in the circuit court of Winnebago county, charged with the larceny of two suits of clothes. After a motion to quash the indictment had been over-

ruled they were tried by a jury which found Lillian Fognini not guilty, the other two defendants guilty, as charged in the indictment, and the value of the property stolen to be the sum of $30. On this verdict they were sentenced to the penitentiary and have sued out this writ of error to reverse the judgment so entered against them.

Our attention is first directed to the question raised by the motion to quash the indictment which was based upon a theory that it was void because there were no women on the grand jury by which it was returned. The record shows that this grand jury was certified by the board of supervisors of Winnebago county on August 1, 1939, from a list of names submitted by the various supervisors to the grand jury committee of the board. The names approved by the grand jury committee were duly certified.

The qualifications and manner of selecting jurors are controlled by the Jurors act, which is chapter 78 of our statutes, and this chapter contains the complete statutory requirements. (*People* v. *Mack,* 367 Ill. 481.) On May 12, 1939, section 1 of this act was amended by the addition of the words "of each sex" and, as so amended, requires the county board in each year to "make a list of sufficient number, not less than one-tenth of the legal voters of each sex of each town or precinct in the county, giving the place of residence of each name on the list, to be known as a jury list." The act, in so far as it is applicable to counties having a population of less than two hundred fifty thousand, was not otherwise amended. Section 2 of the act, which prescribes the qualifications of jurors, remains unchanged, and those qualifications are that the juror be an inhabitant of the town or precinct from which he is selected, between the ages of twenty-one and sixty-five, in the possession of his natural faculties, neither infirm nor decrepit, free from all legal exceptions, of fair character, approved integrity, sound judgment, well informed and having an understanding of the English language.

Section 9 of the act, which has not been amended, prescribes the method of selecting a grand jury which, in counties having a population of less than two hundred and fifty thousand, is to be done by the board of supervisors, and Winnebago county is in this class. The only mandatory provision of section 9 appears to be that the board shall select twenty-three persons possessing the qualifications provided in section 2, which are above enumerated, and as near as may be a proportionate number from each town or precinct in the county. Other provisions of the Jurors act are not here pertinent.

Plaintiffs in error insist that this case is one involving discrimination because of the failure to have women on this grand jury although it is not shown, nor is there any effort made to show, that they were in any degree nor to any extent prejudiced by that fact. Their principal reliance is placed upon the so-called *Scottsboro case, Norris* v. *Alabama,* 294 U. S. 587, 79 L. ed. 1074, but that case is so far different from this one as to be of no value to us on the question we are now deciding. In that case it was shown not only that the defendants were negroes, but that for many years there had been definite and deliberate exclusion of all negroes from all jury lists in the counties involved. In the case now before us the individual members of the board of supervisors turned over to the jury committee of the whole board the names of persons from their respective towns and precincts who possessed all of the qualifications required by section 2 of the act. This was done within less than a month of the effective date of the amendment to section 1 of the act and before the constitutionality of that amendment had been passed upon by this court. It was done, in fact, while the case of *People* v. *Traeger,* 372 Ill. 11, was pending, that being the case which decided the constitutional question above referred to. The *Scottsboro case* showed a concerted and long-continued plan of action on the part of public officials definitely to preju-

dice a certain class or race. The present single instance of a lack of women on one grand jury shows nothing at all to the prejudice of the defendants. There is no showing of any collusion or conspiracy among the members of the board of supervisors at this one particular meeting in August, 1939, to keep women off of the grand jury, nor is there any showing that the board acted otherwise than in entire good faith. It is to be noted that section 1 of the Jurors act refers only to petit jurors and is the only section amended in 1939. Section 9 of the act concerning grand juries makes no reference to section 1. It is, therefore, unnecessary for us to decide, and we expressly do not decide, whether or not women may or must be called to serve on grand juries. All that we hold in the present case is that the plaintiffs in error have not been prejudiced by the proceedings had against them in this respect.

The indictment above referred to charged the defendants with the larceny of two suits of clothes and the theft is alleged to have taken place on September 20, 1939. It is argued, as one of the reasons for reversal, that the proof failed to show the fair, cash market value of these suits on the date of the larceny.

Three witnesses testified as to this matter and the evidence offered by them is substantially alike. It appears from their testimony that the two suits in question were old stock and had been on the shelves of the company three and one-half years prior to September 20, 1939. They were referred to as "pinch" or "sports-back" models and entirely out of style. The record indicates (although it is not entirely clear) that price tags were attached to these suits, but whether or not they were shown to the jury we cannot tell from the abstract. One of the witnesses said he thought the suits had cost $18.50 and that they were worth $20 apiece.

Over repeated objections and motions to strike, the witnesses were all questioned by the assistant State's attorney

as to the "fair, cash value" of the merchandise, omitting the word "market" from the question. The necessity for including the word "market" in the question was raised and saved in the trial court. It is clear from the evidence that these suits had proved unmarketable over a period of three and one-half years by any usual retail methods. That they were out of style and shop-worn was admitted by the People's witnesses. Whether or not there was a market through some cut rate or special sale means, was not proved or touched upon by the evidence. The verdict of the jury that the suits were worth $15 each is not supported by any evidence.

In those types of larceny where the value of the property is material, that value must be alleged and proved, and the proof must show the fair, cash market value at the time and place of the theft. (*People* v. *Butman,* 357 Ill. 506; *People* v. *Silbertrust,* 236 id. 144; *People* v. *Jackson,* 312 id. 611.) For the defect in proof as to fair, cash market value the judgment must be reversed and the cause remanded for a new trial. Other errors are complained of but need not be considered as they are not likely to arise on another trial.

*Reversed and remanded.*