(No. 26340.—

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* CLIFFORD THURMAN, Defendant in Error.

*Opinion filed September 17, 1941.*

WILSON, J., dissenting.

GEORGE F. BARRETT, Attorney General, (KEITH F. SCOTT, State's Attorney, of counsel,) for the People.

ROSWELL B. O'HARRA, for defendant in error.

Per CURIAM: The defendant in error was indicted in the circuit court of McDonough county for the crimes of mayhem and assault with intent to commit mayhem. He interposed a motion to quash the indictment on the ground, among others, that five women served as grand jurors during the proceedings of the grand jury which returned the indictment against him; that except for the votes of one or more of these women there would not have been twelve votes in favor of rendering a true bill against him; that under the law women are not qualified to act as grand

jurors in this State, and that, accordingly, the indictment against him was illegal and void. A stipulation between the People and the defendant discloses that without the vote of at least one of the women on the grand jury no indictment would have been returned against the defendant since there were only twelve votes in favor of the indictment and one or more of the women jurors voted for the return of a true bill. Defendant's motion was sustained and the indictment quashed. Conformably to the authority granted by paragraph 747 of the Criminal Code, (Ill. Rev. Stat. 1939, chap. 38, par. 747, p. 1215,) the People prosecute this writ of error.

The single question presented to the circuit court and, upon review, is the qualification of women to act as grand jurors in this State prior to June 18, 1941. On the day named, an act amending section 9 of the Jurors act received the assent of the Governor and became immediately effective. As amended, section 9 now provides that twenty-three "persons, regardless of sex" shall be selected for grand jury service when a grand jury is required. The issue is thus narrowed to a determination of whether women were eligible to serve as grand jurors in McDonough county, a county having a population of less than 140,000, prior to the effective date of the amendatory act. Decision of this issue necessitates a review of the relevant statutory provisions.

Chapter 78 of the Illinois Revised Statutes contains the complete statutory requirements as to the qualification and selection of jurors, both grand and petit, throughout the State. (*People* v. *Fognini,* 374 Ill. 161; *People* v. *Mack,* 367 id. 481.) The first part of the chapter is "An act concerning jurors, and to repeal certain acts therein named," consisting of twenty-three sections. The second part of the chapter is known as the Jury Commissioners act, applies only to counties having jury commissioners, and relates to the mode of selecting jurors, grand and petit, in counties having a population of more than 140,000 inhabi-

tants. McDonough county, it appears, has a population of less than 30,000 inhabitants and the Jury Commissioners act, it follows, is inapplicable in the present case. Prior to July 1, 1939, section 1 of the Jurors act prescribed the preparation annually, by the county board of each county, of a jury list, consisting of not less than "one-tenth of the legal voters of each town or precinct in the county." In 1939, the General Assembly amended section 1 by adding the words "of each sex" after the words "one-tenth of the legal voters." (Laws of 1939, p. 691.) Section 9 of the Jurors act deals solely with the manner of drawing the grand jury. So far as relevant to the present inquiry, section 9 ordains: "If a grand jury is required by law or by the order of the judge for any court, the county board in each of the counties in this State wherein such court is directed to be held, at least twenty (20) days before the time of appearance specified in the summons hereinafter mentioned shall select twenty-three (23) persons possessing the qualifications provided in section 2, of this act, and as near as may be a proportionate number from each town or precinct in their respective counties, to serve as grand jurors." The question here is not whether the staute requires the participation of women as an essential to the validity of a grand jury, but whether a grand jury on which women served in returning an indictment, as in the case before us, was a valid grand jury.

In the recent case of *People* v. *Traeger*, 372 Ill. 11, this court held that, subject to constitutional essentials of due process and a trial by jury, the General Assembly has a right to prescribe the qualifications of jurors and that an amendment in 1937 to section 2 of the Jury Commissioners act making women eligible for jury service, in no wise affected due process or the constitutional right to jury trial. So the question before us is one of statutory construction conformable with legislative intent. Sections 1 and 2 of the Jurors act are the only sections of that act prescribing qualifications for jury service, whether grand or petit.

Section 1 of the act requires that the county board "make a list of sufficient number, not less than one tenth of the legal voters of each sex of each town or precinct in the county * * * to be known as a jury list." By section 2 the county board "shall select from such list," (evidently that described in section 1,) as many names as may be required "to serve as petit jurors." This section also provides, concerning the qualification of jurors, as follows: "Jurors in all counties in Illinois must have the legal qualifications herein prescribed, *and* shall be chosen a proportionate number from the residents of each town or precinct, *and* only such persons as are:

"*First*—Inhabitants of the town or precinct not exempt from serving on juries.

"*Second*—Of the age of twenty-one (21) years or upwards, and under sixty-five (65) years old.

"*Third*—In possession of their natural faculties and not infirm or decrepit.

"*Fourth*—Free from all legal exceptions, of fair character, * * * , and who understand the English language."

It will be noted that qualifications named in section 2 are not alternative requirements, but must all appear in the prospective juror, as indicated by the use of the conjunction "and."

Section 4 gives the list of those exempt from jury service referred to in section 2 as those having "legal exceptions."

The language of section 2, "must have the legal qualifications herein prescribed," necessarily relates to legal qualifications prescribed in the act. Sections 1 and 2 are the only sections of the act prescribing qualifications, legal or otherwise. As section 2 requires "legal qualifications" in addition to those particularly described in that section, it seems clear that "legal qualifications" referred to necessarily are those set out in section 1. That this is so is shown by the fact that the qualifications described in section 2 are in addition to the "legal qualifications" by the

act required. To say that this is not so but that the necessary qualifications of jurors are limited to those described in section 2, disregarding any reference to section 1, would be to render jurors, whether grand or petit, eligible to such service even though they are not legal voters; for section 2, except by reference to section 1 by the term "legally qualified," makes no requirement that jurors, grand or petit, be legal voters. It is inconceivable that the General Assembly so intended.

Again, the provisions of section 2 requiring that the county board "select from such list" those to act as petit jurors, obviously refer to the "jury list" provided in section 1. This must mean that one qualification of a petit juror, as prescribed by section 2 is that he be on such list. Since he may not be on such list without meeting the qualification prescribed for it, which is that "such list" shall be made up of legal voters of both sexes, it clearly follows that among the qualifications prescribed by section 2 are those necessary to meet the requirements of section 1 in making up the "jury list." This does not mean that grand jurors must be selected from such list. In fact, section 9 does not limit the selection of grand jurors to any list. It does mean, however, that grand jurors shall meet the qualifications prescribed. Sections 1 and 2 of this act, in defining qualifications for jury service, neither prohibit nor require the inclusion of women as an essential to a valid grand or petit jury.

Since section 2 clearly requires for petit jurors the qualification found in section 1, section 9, in requiring for grand jurors the qualifications of section 2, shows a legislative intent that grand jurors shall have whatever qualifications are there prescribed, and it is of no importance that section 9, when this indictment was returned, had not been amended. Such was not necessary as the purpose shown was to adopt the requirements of section 2 as they exist or may exist by that section, and such other sections of the act as are properly included by reference.

Reading sections 1, 2 and 9 together, we are unable to escape the conclusion that the General Assembly intended by section 9 that the requirements of both section 1 and section 2 be observed in determining the qualifications of grand jurors.

*People* v. *Barnett,* 319 Ill. 403, in no wise conflicts with this view. It was there held that the General Assembly, in requiring the proper officers (in that case the jury commissioners) to prepare a list "of all electors between the ages of twenty-one and sixty years * * * to be known as a jury list," intended that the word "electors" should be used in the same sense as that specified in section 1 of article 7 of our constitution of 1870, defining an elector as "a male citizen"; and as the act was passed before women became electors there was no showing of legislative intent to include them in jury lists. Since the decision of the *Barnett case,* and probably because of it, the General Assembly amended section 1 of the Jurors act to include both sexes. · The logic of the decision in the *Barnett case* can no longer apply and it is now generally conceded that women are eligible for petit jury service. This amendment of section 1 has changed the qualifications of section 2, since, as we have seen, the latter section by direct reference includes the qualification of section 1.

We are of the opinion that the General Assembly intended by the amendment to the Jurors act to declare women electors to be eligible for grand as well as petit jury service. It follows that the grand jury returning the indictment before us was a valid grand jury and the indictment a valid indictment.

The circuit court erred in quashing the indictment. Its judgment is reversed and the cause is remanded with directions to overrule the motion to quash.

*Reversed and remanded, with directions.*

Mr. JUSTICE WILSON, dissenting.