NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter. Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts.*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | | |
|---|---|---|
| EARL TYRONE MORRIS, | ) | |
| | ) | Court of Appeals No. A-11178 |
| Appellant, | ) | Trial Court No. 3AN-11-2140 CR |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Appellee. | ) | No. 2429 — September 26, 2014 |
| | ) | |

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack Smith, Judge.

Appearances: David D. Reineke, under contract with the Alaska Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Terisia Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge ALLARD.
Chief Judge MANNHEIMER, concurring.

---

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution and Administrative Rule 24(d).

Earl Tyrone Morris was convicted of second-degree theft after he stole a Canada Goose parka from an outfitter in Anchorage. Under the law in effect at the time of Morris's offense, a person committed second-degree theft, a class C felony, if the person stole property valued at $500 to $25,000.[1]

Morris argues that there was insufficient evidence to support his conviction. Although he characterizes his claim as an attack on the sufficiency of the evidence the State presented at trial, his real dispute concerns the legal definition of the crime of second-degree theft.[2] Specifically, Morris argues that, for purposes of determining the degree of theft he committed, the "market value" of the stolen property must be based on the property's wholesale price, not its retail price. Morris asserts that he was only guilty of third-degree theft, a misdemeanor, because the wholesale price of the stolen parka was only $330.[3]

Resolving Morris's claim hinges on the proper legal interpretation of AS 11.46.980(a), the statute that defines the "value" of stolen property as "the market value of the property at the time and place of the crime."[4]

---

[1]    Former AS 11.46.130(a)(1) (2012); AS 11.46.980(a) (defining the "value" of property as its "market value"). In 2014, the Alaska Legislature amended AS 11.46.130 to define second-degree theft as the theft of property valued between $750 and $25,000. Ch. 83, § 4, SLA 2014. This provision went into effect on July 1, 2014 and does not apply retroactively. Ch. 83, §§ 36, 42, SLA 2014.

[2]    *See* Chief Judge Mannheimer's concurrence, *infra* (explaining the difference between these types of appellate claims); *see also Collins v. State*, 977 P.2d 741, 751-52 (Alaska App. 1999) (Mannheimer, J., concurring) (same).

[3]    *See* former AS 11.46.140(a)(1) (2012) (defining third-degree theft as the theft of property or services valued at $50 or more but less than $500).

[4]    Under AS 11.46.980(a), if the market value cannot reasonably be ascertained, the
(continued...)

As we explain in this opinion, the term "market value" has a recognized meaning at common law: the price at which the property would change hands in an arm's length transaction between a willing seller and a willing buyer who are aware of the pertinent facts. We therefore reject Morris's contention that the term "market value" has no ascertainable legal meaning.

Additionally, in cases involving the theft of retail merchandise, the general rule is that the retail price of an item is *prima facie* evidence of its market value. Here, the State presented evidence that the retail price range of the parka was from $660 to $740. This means that the State's evidence (if believed) was legally sufficient to prove second-degree theft. We therefore affirm Morris's conviction.

Morris separately appeals his 2-year sentence as excessive. As Morris recognizes, we do not have jurisdiction to hear this claim.[5] We therefore forward this portion of Morris's appeal to the Alaska Supreme Court under Appellate Rule 215(k).

*Factual and procedural background*

On February 15, 2011, a man walked into 6th Avenue Outfitters in Anchorage wearing a black Canada Goose Resolute parka — the same type of parka carried by the outfitter. An employee directed the man to the men's side of the store where the man tried on one or more parkas and then left the store. About fifteen minutes later, a store employee found a used Canada Goose parka lying on the floor that appeared to be identical to the parka worn by the man. Employees then discovered an empty space

---

[4]  (...continued)
value of the stolen property is interpreted as the cost of replacement of the property within a reasonable time after the crime.

[5]  *See* AS 22.07.020(b); Alaska R. App. P. 215(a)(1).

in the rack holding the Canada Goose parkas and concluded that a used parka had been switched for a new one. They searched the used parka and found an Alaska Quest card in the name of Earl T. Morris.

About a week later, an employee of the outfitter spotted the man who had switched the parka. The general manager and another employee conducted a citizen's arrest of the man, who was later identified as Morris. Morris was wearing a new black Canada Goose Resolute parka at the time of his arrest.

At trial, the general manager of 6th Avenue Outfitters testified that on February 15, 2011, the store was selling the stolen parka for $659.95. He stated that Canada Goose charged a wholesale price of $330 and suggested a retail price of $675, and that Canada Goose did not want its authorized retailers to sell its products for less than the "keystone," which is essentially double the wholesale price.

An investigator with the Public Defender Agency testified that she searched the Internet on August 15, 2011, for the type of parka allegedly stolen by Morris and found a website selling the parka for $220.98. The State countered this assertion with evidence that the website the investigator had visited was not an authorized retailer of Canada Goose parkas and that the low-priced parka was probably a counterfeit. The State also presented evidence that Cabela's and Altitude Sports, two authorized retailers of Canada Goose parkas, advertised retail prices of $739 and $702 for their parkas.

The jury subsequently found Morris guilty of second-degree theft. This appeal followed.

*The legal meaning of "market value"*

As explained earlier, former AS 11.46.130(a)(1) defined second-degree theft as theft of property with a value of $500 to $25,000.  Alaska Statute 11.46.980(a) further provides:

> Whenever it is necessary to determine the value of property [under Chapter 46 — Offenses Against Property], that value is the market value of the property at the time and place of the crime unless otherwise specified or, if the market value cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime.

The term "market value" is not further defined in the criminal code.

Morris contends that the lack of a specific statutory definition for "market value" makes the term ambiguous.  He argues that, given this ambiguity, the term should be construed, under the rule of lenity, in the light most favorable to him.  In particular, Morris argues that in cases where an item of property is stolen from a retail store, the "market value" of the property must, as a matter of law, be the wholesale price the retailer paid to acquire the property, because that is the lowest possible valuation of the property.

But the doctrine that ambiguous penal statutes must be construed in the defendant's favor only comes into play if the statute remains ambiguous *after* it has been subjected to recognized methods of statutory construction.[6]  Where, as here, a statute employs a term that has a recognized definition at common law, the legislature is

---

[6]  *De Nardo v. State*, 819 P.2d 903, 907 (Alaska App. 1991).

presumed to have used the term in its common-law sense, unless the legislative history demonstrates that some other meaning was intended.[7]

"Market value" or "fair market value" is a legal term with a well-established meaning at common law: it is "the amount at which the property would change hands, between a willing buyer and a willing seller, neither being under compulsion to buy or sell and both having knowledge of the relevant facts."[8] The Alaska courts have used this definition, or a slight variation of it, in both civil and criminal cases.[9] Other jurisdictions likewise agree that, as a general matter, "market value" means the price a willing buyer would pay to a willing seller in the open market at a certain time and place.[10]

Indeed, the Alaska Criminal Pattern Jury Instructions use a variant of this common law definition of "market value" in the pattern instruction for

---

[7] *Morissette v. United States*, 342 U.S. 246, 263 (1952) (holding that where there is no definition in a statute, a word in the statute is construed to have its common law meaning); *Young v. Embley*, 143 P.3d 936, 945 (Alaska 2006) (noting that when the statutory language and legislative history are ambiguous, Alaska courts look to the common law to discern legislative intent and interpret statutes).

[8] *See* Black's Law Dictionary 597 (6th ed. 1990); *see also* 50 Am. Jur.2d *Larceny* § 45 (2014) ("'Fair market value,' for the purposes of establishing the grade of the offense of larceny, is the price the property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing."); 52B C.J.S. *Larceny* § 81 (2014).

[9] *See, e.g.*, *Doyle v. Doyle*, 815 P.2d 366, 370 n.6 (Alaska 1991); *Jones v. State*, 1984 WL 908613, at *6 (Alaska App. Aug. 29, 1984) (unpublished).

[10] *See, e.g.*, *State v. Hall*, 304 P.3d 677, 681 (Kan. 2013); *People v. Irrizari*, 156 N.E.2d 69, 71 (N.Y. 1959); *State v. Downing*, 654 N.W.2d 793, 798 (S.D. 2002); *Com. v. Hanes*, 522 A.2d 622, 625 (Pa. Super. 1987); *People v. Johnson*, 348 N.W.2d 716, 718 (Mich. App. 1984).

AS 11.46.980(a).[11]  And Morris himself requested that the trial court instruct the jury with this definition (although the court denied his request).

Thus, contrary to Morris's argument on appeal, the term "market value" has a recognized legal meaning.

*The relationship between an item's wholesale and retail price and its "market value"*

As the term is used by the courts, the market value of an item is not necessarily the same as the price at which it was offered for sale, or the price at which it was purchased, whether in the wholesale or retail market.  Rather, "market value" depends on a series of factors:  who is doing the buying and who is doing the selling, when the transaction took place, and in what market (*i.e.*, a retail or a wholesale market).[12]

But in the context of retail merchants selling goods to ordinary consumers, the weight of authority supports the rule that an item's retail price is *prima facie* evidence

---

[11]  *See* Alaska Criminal Pattern Jury Instruction AS 11.46.980(a) (2013).

[12]  *See Hall*, 304 P.3d at 681 ("market value" depends on the identity of buyer and seller); *State v. Carter*, 544 S.W.2d 334, 338 (Mo. App. 1976) (value is defined situationally); *State v. Campell*, 721 S.W.2d 813, 819 (Tenn. Crim. App. 1986) ("market value" has no invariable definition).

of its market value at the time of the theft.[13]  The basis for this rule was explained by the New York Court of Appeals in *People v. Irrizari*:[14]

> To accept wholesale value in a case [involving larceny from a department store] would be to ignore the facts of economic life.  Stated very simply, it is the retailer's function in our economy to move goods to the consuming public and, in the process, the market value of the goods is unquestionably enhanced.  In addition, the retailer expends money on various services including advertising, promoting, display and packaging in order to increase the interest of the public and make it more willing to buy.  When, therefore, a thief steals an article from a department store, he steals something having a market value quite different from that which it has in the hands of the wholesaler.[15]

This does not mean that an item's wholesale price is entirely irrelevant to the determination of its market value in the retail market.  The wholesale cost of an item may be particularly relevant, for example, in a case in which the wholesale cost is

---

[13]  *See, e.g.*, *Irrizari*, 156 N.E.2d at 70-71; *Downing*, 654 N.W.2d at 798-99; *Hanes*, 522 A.2d at 625; *State v. McDonald*, 251 N.W.2d 705, 707 (Minn. 1977); *State v. King*, 396 A.2d 354, 355-56 (N.J. Super. App. Div. 1978); *State v. Fish*, 748 S.E.2d 65, 68-69 (N.C. App. 2013); *Maisel v. People*, 442 P.2d 399, 401 (Colo. 1968); *Calbert v. State*, 670 P.2d 576 (Nev. 1983); *State v. Jennings*, 9 A.3d 446, 454-55 (Conn. App. 2011); *People v. Cook*, 43 Cal. Rptr. 646, 648 (Cal. App. 2d Dist. 1965); *State v. Sorrell*, 388 P.2d 429, 431-32 (Ariz. 1964).  *But see Washington v. State*, 751 P.2d 384, 387 (Wyo. 1988) (defining market value as retail price); *State v. Garza*, 487 N.W.2d 551, 557 (Neb. 1992) (price tags alone insufficient to establish market value).

[14]  156 N.E.2d 69 (N.Y. 1959).

[15]  *Id.* at 70-71; *see also King*, 396 A.2d at 356 (quoting *Irrizari*); *Maisel*, 442 P.2d at 401 (same); *Downing*, 654 N.W.2d at 798-99 (same).

"disproportionately low in relationship to the listed sales price or ... otherwise inconsistent with the victim-retailer's customary mark-up practices."[16]

Likewise, there will be times when the retail price of an item represents the hope of the retailer more than the reality of the market.[17]  Thus, a defendant might rebut the presumption that the retail price of an item represents its market value by offering evidence that "there are no willing buyers at the alleged price; [or that] even though there is a willing buyer at the alleged price, the price is unreasonable in light of local competitor's prices for the same or similar items; or ... that the seller customarily sold the property at a discounted price."[18]  The defendant might also introduce evidence that a retailer's goods have lost their market value, such as when clothing has sat on the shelf for a long period of time and has gone out of style.[19]

Having rejected Morris's contention that the term "market value" should be interpreted under the rule of lenity to mean the wholesale price, we now turn to his actual claim of legal insufficiency.  In Morris's case, the jury heard evidence that the stolen parka had a retail price of $659.95 and that other reputable retailers were asking even higher prices for the same parka.  We conclude that a fair-minded juror could

---

[16]  *King*, 396 A.2d at 356-57.

[17]  *See Garza*, 487 N.W.2d at 557 (noting that a price tag only represents the sum the retailer hopes to obtain, not necessarily the amount a willing buyer would pay); *Carter*, 544 S.W.2d at 338 (noting that a merchant may arbitrarily inflate or deflate the retail price such that it does not realistically represent the true value).

[18]  *Hanes*, 522 A.2d at 628; *see also Irrizari*, 156 N.E.2d at 71.

[19]  *See McDonald*, 251 N.W.2d at 707 (citing *People v. Fognini*, 28 N.E.2d 95, 97 (Ill. 1940)).

reasonably conclude based on this evidence that the market value of the stolen parka was more than $500.[20] We therefore affirm Morris's conviction for second-degree theft.

*Conclusion*

We AFFIRM Morris's conviction, and we refer Morris's sentence appeal to the Alaska Supreme Court under Appellate Rule 215(k).

---

[20] *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012).

Judge MANNHEIMER, concurring.

I write separately to supplement the lead opinion with regard to two issues.

The first issue arises from the way Morris frames his claim on appeal. As the lead opinion explains, Morris argues that the phrase "market value" is ambiguous, and that this phrase must therefore be given the interpretation most favorable to him — *i.e.*, that "market value" must be construed as "wholesale value".

Morris describes this argument as a "sufficiency of the evidence" claim — but it is not. Morris's underlying claim is that the *law* needs to be clarified. Morris is essentially claiming that his jury was misinstructed, or at least misleadingly instructed, concerning the elements of second-degree theft — because the jurors were not instructed in accordance with Morris's proposed interpretation of "market value".

See the discussion of this point in *Collins v. State*, 977 P.2d 741, 748, 751-52 (Alaska App. 1999).

Identifying the correct legal characterization of Morris's argument is important because, if Morris's claim were a true "sufficiency of the evidence" claim, then a ruling in Morris's favor would trigger double jeopardy consequences: it would result not only in reversal of the trial court's judgement, but also dismissal of the case against Morris.

But Morris's argument is really about the definition of the offense, and not the sufficiency of the evidence. Because of this, even if we had agreed with Morris about the interpretation of the statute, Morris would only have been entitled to a reversal of his conviction, and the State would have been allowed to re-try him.

I acknowledge that, if we *had* ruled that the determinative value of the parka was its wholesale cost, then, given the evidence in Morris's case (in particular, the

uncontested evidence that the wholesale value of the parka was considerably less than $500), the State could hardly have hoped to successfully prosecute Morris for felony theft. But we must not let this fact obscure the legal principle involved here: the distinction between a true "insufficiency of the evidence" claim versus a claim that the verdict was based on an erroneous understanding of the law.

This brings me to the second issue: the sufficiency of the jury instructions in Morris's case.

Morris's jury was instructed that the value of the stolen parka was its "market value" at the time and place of the theft, but the jury did not receive any further instruction on the meaning of "market value". In particular, the jury was not apprised of the definition we describe in this opinion, and which we confirm today as the law of Alaska.

Morris's case is especially problematic because his attorney actually asked the trial judge to give the jury an instruction on "market value" that more or less tracked the definition we adopt in this opinion — and the trial judge refused.

One might therefore wonder whether Morris should be granted a new trial in front of a jury that *is* affirmatively instructed on the meaning of "market value". For three reasons, I conclude that the answer is "no".

First, the legal meaning of "market value" does not differ greatly from its commonly understood meaning. In fact, the common-law definition of "market value" is simply a more refined version of its everyday meaning. For instance, *Webster's New World College Dictionary* defines "market value" as "the price that a commodity can be expected to bring when sold in a given market". [1]

---

[1] *Webster's New World College Dictionary* (Fourth Edition, 2004), p. 880.

Second, at Morris's trial, both parties litigated this case under the implicit assumption that the parka's "market value" was more or less accurately reflected by its retail price at the time of the theft.

The State presented evidence that 6th Avenue Outfitters was selling the Canada Goose parka for $660, and that two other authorized retailers were selling the same parka for $740. Morris, for his part, did not argue that the wholesale price was controlling, nor did he argue that the retail price of the parka was a misleading gauge of its market value, since the wholesale price was so much lower. Rather, Morris presented competing evidence as to the retail price — specifically, evidence that the same parka was selling on the Internet for $221. (As the lead opinion explains, the State presented rebutting evidence that this Internet retailer was not an authorized dealer, and that the parka being sold at this price was probably a counterfeit.)

And finally, Morris's defense to the theft charge did not involve the value of the parka.

During the State's summation at the end of the trial, the prosecutor only briefly mentioned the issue of value — arguing without elaboration that the market value of the stolen parka was the price at which 6th Avenue Outfitters offered it for sale on the day of the crime: $659.95.

Morris's attorney never disputed the market value of the stolen parka in his summation to the jury. Instead, the defense attorney focused exclusively on the assertion that Morris had not committed any theft at all — that he had been mistakenly identified as the man who stole the parka from 6th Avenue Outfitters.

For all of these reasons, I conclude that even if Morris's jury had received a more detailed instruction on the legal meaning of "market value", there is no reasonable possibility that the jury's verdict would have been different.