NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DANIEL J. MORRIS,

                    Appellant,

          v.

STATE OF ALASKA,

                    Appellee.

Court of Appeals No. A-14072
Trial Court No. 1KE-20-00426 CR

O P I N I O N

No. 2807 — June 13, 2025

Appeal from the Superior Court, First Judicial District, Ketchikan, Trevor Stephens, Judge.

Appearances: Julia Bedell, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Scott Crawford (briefing) and Kayla Doyle (oral argument), Assistant Attorneys General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge ALLARD.

Daniel J. Morris was convicted, following a jury trial, of one count of second-degree theft for stealing an inflatable raft from a creek bed in Ketchikan. Morris raises multiple arguments on appeal, including that the State presented insufficient

evidence as to both his intent and the raft's value. For the reasons explained in this opinion, we reject Morris's argument that the State presented insufficient evidence as to his intent, but we agree that the State presented insufficient evidence that the raft's value was $750 or more. We therefore reverse Morris's conviction for second-degree theft, but we remand this case to the superior court to enter a conviction for third-degree theft and to resentence Morris on that crime.

*Background facts*

Morris moved to Ketchikan in late May 2020 to work on a fishing boat. Shortly after arriving, Morris went hiking and spotted an inflatable raft on the creek bed near Signal Creek Campground. A few days later, Morris went hiking again and saw the raft still sitting on the creek bed. At trial, Morris testified that he thought the raft had been abandoned.

Morris took a picture of the raft and showed it to a local restaurant owner he had befriended, Lesly Trelfa. Trelfa testified that she also believed the raft was abandoned, and she paid her son, James Burge, to help Morris retrieve the raft.

A few days later, Morris and Burge drove to Signal Creek in Burge's truck and picked up the raft. A local resident observed Morris and Burge removing the raft while she was on a walk with her family. She testified that Morris was friendly and waved to her as she walked by.

After collecting the supposedly abandoned raft, Morris and Burge dropped it off at Trelfa's property — a vacant lot on the outskirts of town. They placed it near the back of the property where it was not visible from the road.

As it turned out, however, the raft had not been abandoned. It belonged to the Signal Creek Campground host, Stephen Kirkland, who testified at trial that he used the raft to paddle out onto the lake every morning and afternoon to get cell phone service.

A few hours after Morris took the raft, Kirkland noticed it was missing and reported it stolen. Forest Service Captain William Elsner investigated the case and quickly determined that Burge had been involved. Burge told Elsner where they had stored the raft and helped Elsner recover it.

Elsner then met with Morris and interviewed him. Morris told Elsner that he thought the raft was abandoned, but Morris also said that he had not talked to anybody at the campground prior to taking the raft, and that he had not made any efforts to find the owner since he took it. Later that day, Morris sent a message to Kirkland apologizing for taking the raft, but also blaming Kirkland for leaving his raft out on the creek bed.

Based on this conduct, Morris was indicted on one count of second-degree theft.[1] His case proceeded to a jury trial. Although Morris originally told Elsner he believed the raft was abandoned, Morris told a different story at trial: he testified that he "intended to take [the] raft, clean it up, and give it back to the owner."

The jury convicted Morris of second-degree theft. This appeal followed.

*Why we reverse Morris's conviction for second-degree theft*

To prove that Morris was guilty of theft in any degree, the State was required to prove that Morris acted "with intent to deprive another of property or to appropriate property of another to [him]self."[2] To prove that Morris was guilty of theft in the second degree, the State was also required to prove that the value of the raft was at least $750.[3]

---

[1]  AS 11.46.130(a)(1).

[2]  AS 11.46.100(1).

[3]  AS 11.46.130(a)(1).

On appeal, Morris argues that the State presented insufficient evidence as to both his intent and the value of the raft. For the reasons we are about to explain, we conclude that the evidence as to Morris's intent was sufficient, but we agree with Morris that the State presented insufficient evidence to establish that the value of the raft was at least $750.

When we review the sufficiency of the evidence to support a conviction, we are required to view the evidence, and all reasonable inferences to be drawn from that evidence, in the light most favorable to upholding the verdict.[4] Viewing the evidence in that light, we then determine whether "a reasonable fact-finder could have concluded that the State's case was proved beyond a reasonable doubt."[5]

As to Morris's claim that the State presented insufficient evidence of his intent to steal, it is certainly true that there was evidence that Morris believed the raft was abandoned: the raft had been left unattended on a creek bed; Morris showed a picture of the raft to a local restaurant owner who agreed that it was likely abandoned; and Morris readily admitted to taking the raft and apologized to the owner.

But we are required to view the evidence in the light most favorable to the jury's guilty verdict, not in the light most favorable to Morris. Interpreted in that light, the evidence paints a different picture. Morris asked Trelfa if she believed the raft was abandoned, but he made no attempt to ask anyone at Signal Creek Campground the same question, even though they would have been in a much better position to know the answer. Morris also changed his story: he told Captain Elsner that he believed the raft was abandoned, but he testified at trial that he intended to clean up the raft and then return it to the owner. And finally, Morris moved the raft to a vacant lot on the outskirts

---

[4]   *Johnson v. State*, 188 P.3d 700, 702 (Alaska App. 2008).

[5]   *Id.* (citing *Helmer v. State*, 608 P.2d 38, 39 (Alaska 1980)).

of town, stored the raft in a location that was not visible from the road, and made no efforts to restore the raft or identify the owner.

Taken together, and viewed in the light most favorable to the jury's verdict, this evidence suggests that Morris did not actually believe the raft was abandoned, and that he did not intend to return it to its rightful owner. We note that this case turns at least in part on local customs and practice. Morris's story that he believed the raft had been abandoned might seem plausible to residents of a city like Anchorage, where it is unlikely a person would leave a boat unattended in a public place for an extended period of time. But this same story might — and apparently did — ring false to a Ketchikan jury more familiar with life in rural Alaska. Our deferential review of a jury's verdict is designed to ensure that appellate courts do not substitute our judgment for the wisdom and experience of local community members.

For these reasons, we conclude that the evidence was sufficient for a reasonable juror to find that Morris acted with intent to deprive another of property or to appropriate that property to himself.

As to the raft's value, however, we conclude that the State presented insufficient evidence to establish that the value of the raft was at least $750. Alaska law provides two methods for calculating the value of stolen property. The default method is "the market value of the property at the time and place of the crime."[6] "Market value" refers to "the price a willing buyer would pay to a willing seller in the open market."[7] If, however, "the market value cannot reasonably be ascertained," the value of the property is "the cost of replacement of the property within a reasonable time after the crime."[8]

---

[6] AS 11.46.980(a).

[7] *Morris v. State*, 334 P.3d 1244, 1247-48 (Alaska App. 2014); *see also* Alaska Criminal Pattern Jury Instruction 11.46.980(a) (2015).

[8] AS 11.46.980(a).

At trial, the State presented two critical pieces of evidence as to the value of the raft. The first was Kirkland's testimony that he purchased the raft new six years earlier (in 2014) for $899. The second was Kirkland's statement to Captain Elsner that a replacement raft would cost $1,750.

Both of these numbers, of course, are over the $750 threshold required to prove second-degree theft. But neither provided sufficient evidence for the jury to determine that the value of the raft was at least $750 under the law for calculating value we have just described.

"Market value" — *i.e.*, the default mechanism for calculating value — refers to the value of the property *at the time and place of the crime*. The original price the owner paid for the property may serve as evidence of the property's market value at the time of the crime. In fact, we have previously found that the original price may be sufficient, standing on its own, for a reasonable juror to conclude that the market value of the property exceeds the statutory threshold. But that is not true in all cases, and it is not true in Morris's case. To see why, it is helpful to compare the facts of this case to the facts in our unpublished decision in *McCue v. State*.[9]

In *McCue*, the State was required to prove that the market value of the stolen property (a vehicle) was at least $1,000.[10] The State's primary evidence on this point was that the victim had purchased the vehicle for $2,500 two years earlier.[11] The owner also testified that the vehicle remained in good condition, was not his primary mode of transportation, and usually remained parked at his apartment complex.[12] Given these facts, we concluded that a reasonable juror could conclude that the value of the

---

[9]  *McCue v. State*, 2022 WL 110448 (Alaska App. Jan. 12, 2022) (unpublished).

[10]  *Id.* at *2.

[11]  *Id.*

[12]  *Id.*

vehicle was still at least $1,000.[13] In other words, we concluded that a reasonable juror, drawing on her knowledge and experience, could conclude that a used car had not lost more than sixty percent of its value over a two-year period.

The situation we face here is quite different. Kirkland did not purchase a used car two years before the theft. Rather, he purchased a new inflatable raft six years before the theft, and the undisputed testimony at trial established that the raft was routinely used and left out in the sun. Furthermore, the difference between the original purchase price and the statutory threshold was not $1,500 (or sixty percent of the original purchase price) like in *McCue*, but only $149 (or seventeen percent of the original purchase price). Given the nature of the property, the time since it had been purchased, and the heavy use it experienced, a reasonable juror could only speculate that the current market value of the raft was at least $750.[14] This speculation is insufficient to establish a market value of at least $750 beyond a reasonable doubt.[15]

Furthermore, we note, that although the State claims on appeal that Kirkland's testimony about the original cost of the boat was sufficient for a jury to conclude that the market value of the boat was at least $750 six years later, it did not ask the jury to reach that conclusion in this case. Instead, the State told the jury that the

---

[13] *Id.*

[14] On appeal, the State asserts that the jury was entitled to "infer that the price of the raft had remained stable or even increased due to inflation and supply chain issues during the six years [between 2014 and May 2020]." But this is pure speculation. The State presented no evidence that heightened inflation or supply chain issues existed in Ketchikan during this time. In the absence of such evidence, no reasonable juror could conclude that an inflatable raft that was used regularly and stored outside would maintain its value (let alone appreciate) over a six-year period.

[15] *See Augustine v. State*, 355 P.3d 573, 590 (Alaska App. 2015) (holding that the evidence presented at trial, "even when viewed in the light most favorable to the verdict," was "so speculative and equivocal that it [was] legally insufficient" to support the conviction beyond a reasonable doubt).

market value could not reasonably be ascertained, and that the jury should therefore rely on the cost of replacing the raft (*i.e.*, the $1,750 Kirkland testified it would cost to purchase a new raft).[16]

But the State's argument on this point was legally incorrect. As we have explained above, "market value" refers to "the price a willing buyer would pay to a willing seller in the open market."[17] When the State argued this point to the jury, it told them that the market value could not reasonably be ascertained because Kirkland "does not sell any of his boats."

When we speak of a "willing seller," however, we are not talking about whether the victim was willing to sell his property. We are instead operating in the world of hypotheticals: we first imagine a person who is willing to sell the property, and we ask what price they could reasonably obtain from a person who is willing to buy it.[18] If the State wanted the jury to rely on the raft's replacement value, it was not enough to present evidence that *Kirkland* did not want to sell his boat. Instead, the State was required to establish, in effect, that the hypothetical willing sellers and willing buyers we have just described did not exist at the time this crime occurred — *i.e.*, that there was no market (and thus no market value) for the raft. The State presented no evidence on this point; nor is it particularly plausible, in the absence of such evidence, that there is no market for a working inflatable raft in a coastal city like Ketchikan.

Because the State failed to present sufficient evidence establishing that the market value could not reasonably be ascertained, the jury was required to rely on the

---

[16]   *See* AS 11.46.980(a).

[17]   *Morris v. State*, 334 P.3d 1244, 1248 (Alaska App. 2014); *see also* Alaska Criminal Pattern Jury Instruction 11.46.980(a) (2015).

[18]   *See Morris*, 334 P.3d at 1247-48 (explaining the concept of "market value").

raft's market value.[19] And as we have already explained, the State presented insufficient evidence to establish that the market value was at least $750. Under these circumstances, we must reverse Morris's conviction for second-degree theft.

At oral argument, we asked Morris's attorney what remedy should be provided if we concluded that the evidence was insufficient to establish that the raft's value was at least $750. Morris's attorney answered that it would be reasonable to infer that the raft was worth at least $250, which would support a conviction for third-degree theft.[20] We agree. Accordingly, we reverse Morris's conviction for second-degree theft and direct the superior court to enter a conviction for the lesser-included offense of third-degree theft.

*Morris's remaining claims*

Morris raises two other issues on appeal: he claims that the jury instruction on calculating value was plain error, and that his sentence was excessive.

As to the instruction on calculating value, the jury received the well-established and legally accurate pattern instruction that mirrors the statutory language we have already quoted and discussed above. As Morris has correctly argued on appeal, there was a serious issue concerning the jury's calculation of the raft's value in this case, but that issue derived from the insufficiency of the State's evidence, not from any legal error in the jury instruction. We therefore reject Morris's argument that the jury instruction constituted plain error.

---

[19] *See State v. Slater*, 487 P.3d 59, 66 (Or. App. 2021) (holding that the trial court erred in relying on replacement value when the state failed to establish that the market value was not reasonably ascertainable).

[20] AS 11.46.140(a)(1); *see Andrew v. State*, 237 P.3d 1027, 1049 (Alaska App. 2010) (holding that, where the evidence was insufficient to establish that the stolen property met the felony threshold amount, entry of conviction on the lesser-included offense was warranted since the evidence was sufficient to establish the lower threshold amount).

As to Morris's claim that his sentence is excessive, we need not reach that claim because Morris will be resentenced on remand. Even if that were not the case, however, this Court lacks jurisdiction to hear Morris's excessive sentence claim since he was only sentenced to 6 months of active jail time.[21]

*Conclusion*

Morris's conviction for second-degree theft is REVERSED, and this case is REMANDED to the superior court to enter a conviction on the lesser-included offense of third-degree theft and to resentence Morris for that offense. We do not retain jurisdiction.

---

[21] *See* AS 12.55.120(a); AS 22.07.020(b); *see also* Alaska R. App. P. 215(a)(1) (providing that a defendant may only appeal their sentence as excessive in felony cases when they are given "an unsuspended sentence of imprisonment that exceeds two years").